Jack **RICHARDSON**, Appellant,

v.

**PERMACEL TAPE CORPORATION,**
Appellee.

**PERMACEL TAPE CORPORATION,**
Cross-Appellant,

v.

Jack **RICHARDSON**, Cross-Appellee.

**No. 16431.**

United States Court of Appeals
Fifth Circuit.

May 1, 1957.

Rehearing Denied June 14, 1957.

James U. Thurman, Leslie Shults, Shults & Thurman, Dallas, Tex., for appellant.

Carlisle Blalock, Paul Carrington, Dallas, Tex., Carrington, Gowan, Johnson, Bromberg & Leeds, Dallas, Tex., Herbert

E. Bailey, New Brunswick, N. J., of counsel, for appellee.

Before RIVES, JONES and BROWN, Circuit Judges.

RIVES, Circuit Judge.

Judgment on the pleadings was entered in favor of the defendant, Permacel Tape Corporation, by which judgment, however, the plaintiff, Jack Richardson, was released and discharged from the terms and provisions of a "Sales Personnel Agreement" which he had signed. Both parties appeal.

Many of the facts are without dispute. Richardson, now fifty-four years of age, first entered the employ of Permacel as a salesman in 1945. In 1954 he was made Division Sales Manager with headquarters in Dallas, Texas. On November 11, 1955, he was directed by George A. Fitzgerald, Vice President of Permacel in charge of sales, to secure from all of the salesmen of his division, including himself, the execution of an agreement styled "Sales Personnel Agreement," in substance as follows:

"Sales Personnel Agreement.

"Jack Richardson (hereinafter called 'Employee'), and Permacel Tape Corporation * * * (hereinafter caller 'Company'), in consideration of Company's employment of Employee, and of wages and salary paid him, and of the mutual promises herein contained, hereby agree as follows:

"1. Employee shall not divulge to others or use for his own benefit any confidential information obtained during the course of his employment with Company relating to sales, sales volume or strategy, customers, number or location of salesmen, formulae, processes, methods, machines, manufactures, compositions, ideas, improvements or inventions belonging to or relating to the affairs of Company, Johnson & Johnson or its subsidiary or affiliated companies, without first obtaining Company's written permission.

"2. Employee for a period of three (3) years after leaving Company's employment for any reason whatsoever, shall not, in the United States or Canada without first obtaining Company's written permission, engage in or enter the employment of or act as a sales agent or broker for the products of or as an advisor or consultant to any person, firm or corporation engaged in or about to become engaged in the manufacture of adhesive or adhesive tapes.

"3. Should Employee be discharged by Company after a period of three (3) months continuous employment by Company and should Employee within three (3) months after the end of the calendar month of said discharge be unable to secure suitable new employment or occupation after having devoted his best efforts to finding such employment or gainful occupation, then, upon written notice by Employee by Registered Mail to the Company at its address set forth, Company unless it notifies Employee in writing that it elects not to enforce paragraph 2 of this contract, shall pay Employee at the end of each month thereafter, for so long as it elects to continue to enforce said paragraph 2 or until such time as Employee finds employment or gainful occupation consistent with this contract, sixty-six and sixty-seven hundreds per cent (66.67%) of the monthly salary (exclusive of extra compensation of any kind) received by Employee at the time of such discharge by Company. Employee, during the period of such payments, shall conscientiously seek employment or occupation consistent with this agreement and upon obtaining such employment forthwith notify Company to that effect by Registered Mail.

"4. Upon notice by Company of its election to discontinue such monthly payments as provided in

paragraph 3 or upon termination of the third year after Employee's discharge by Company, whichever occurs sooner, Employee then shall not be precluded from accepting any employment which Employee would be free to accept in the absence of this agreement.

"5. This agreement shall be interpreted in accordance with the laws of the State of New Jersey."

For approximately three years execution of that form of agreement had been required of all new employees. The notice of November 11, 1955 advised that its execution was being made mandatory upon all employees, including those employed by Permacel prior to the time that the agreement was first drafted. Richardson executed the agreement on January 12, 1956. He received no further correspondence or communication from Permacel until eighteen days later, when on January 30, 1956 he was discharged both orally and by letter, his discharge to become effective February 29, 1956.

The following facts averred in the complaint or in the counterclaim are in dispute, and will be here stated favorably to that party to whom an opportunity of proof by evidence was denied.[1] Richardson had theretofore objected to executing such an agreement. At a meeting of the Division Sales Managers of Permacel in December, 1955, he discussed his position with Vice President Fitzgerald, who assured him that the company was satisfied with the accomplishments of his division, that Richardson's work as manager of the division was satisfactory, that Permacel had no quarrel with him as such manager. It was publicly announced in open meeting that there was no problem with any of the Division Sales Managers. Richardson alleges that the officers of Permacel knowingly and willfully misrepresented to him that his position of employment by the company was secure, that relying upon such representations he executed the

"Sales Personnel Agreement" on January 12, 1956. He had always rendered faithful service to the company. His division had had a larger percentage sales increase than the national average for the company. His discharge "was wholly without cause, or the result of any neglect of duty by the plaintiff or disloyalty by him to his employer." According to the complaint, the agreement has prevented Richardson from pursuing his present vocation and from obtaining gainful employment, and will continue so to operate for a period of three years. He prays for the recovery of damages and for the avoidance of the "Sales Personnel Agreement."

Permacel on its part alleges that Richardson's employment was terminable at will. As Division Sales Manager he had become familiar with many trade secrets and a large amount of confidential information, which Permacel avers upon information and belief that, following his discharge, he began to divulge to its competitors, and that he continues to use Permacel's trade secrets and confidential information for his own benefit, as a result of which Permacel has been and will be deprived of sales of its products. Permacel prays for the recovery of damages and that Richardson be enjoined from divulging trade secrets and confidential information obtained during the course of his employment. Richardson denies Permacel's allegations of misconduct on his part.

It was under that factual status that the district court entered its judgment on the pleadings dismissing Richardson's action against Permacel, but adjudging that Richardson had been discharged from the operation of the "Sales Personnel Agreement." The district court further held that Richardson's release from such agreement was

"without prejudice as to any common law or statutory rights of the Defendant, Permacel Tape Corporation, to prevent the Plaintiff from

[1] Rules 12(c) and 56, Federal Rules of Civil Procedure, 28 U.S.C.A.; 2 Moore's Federal Practice, 2nd ed., Para. 12.15, p. 2269; 6 Id. Para. 56.15(1), p. 2114.

disclosing confidential information obtained during the course of his employment with Defendant and without prejudice as to any common law or statutory rights of Defendant, Permacel Tape Corporation, to prevent the Plaintiff from engaging in or entering the employment of or acting as a sales agent or broker for the products of or as an adviser or consultant to any person, firm or corporation engaged in or about to become engaged in the manufacture of adhesive or adhesive tapes."

Richardson made no motion to dismiss or for summary judgment or judgment on the pleadings, and Permacel's counter-claim was not dismissed.

Richardson's complaint counted upon three theories: (1) that the facts gave rise to an implied agreement that he would be employed by Permacel for so long a time as he performed his duties in a satisfactory manner; (2) that the execution of the "Sales Personnel Agreement" was procured from him by false and fraudulent representations of the officers of Permacel; (3) that the agreement not to take employment with a competing company was not reasonable in its restraints as to time or area involved and was void as against public policy.[2]

Richardson undertook to plead the facts from which he concluded that Permacel had impliedly agreed to continue his employment for so long a time as he performed his duties in a satisfactory manner. Up to the time of the execution of the "Sales Personnel Agreement," it does not appear that there was any understanding as to the length of Richardson's employment.[3] Paragraph numbered 3 of said agreement recognized that Richardson could be discharged after a period of employment of three months. Apparently the parties did not contemplate an earlier discharge. An employee could not reasonably be expected to execute an agreement so restrictive on his future employment by others if he knew that his employer had already made up his mind to discharge him in the immediate future. The request on the employee to execute such an agreement, therefore, we think, is an implied representation of the absence of any such then present intent. It does not, however, in our opinion, constitute any implied release of the employer's full authority to manage his own business, and, if he subsequently decides so to do, to discharge the employee, with or without fault on the employee's part; that is, it does not give rise to any contract based on the apparent intention of the parties, a contract implied *in fact*.

A contract implied *in law* does not require mutual consent. It is simply a quasi-contractual obligation created by law for reasons of justice.[4] Such a device in the present case is both inappropriate and unnecessary; inappropriate because not in accordance with the probable actual intent of the employer, and unnecessary because another adequate remedy is already available.

That remedy is for the claimed fraudulent procurement of the "Sales Personnel Agreement," for which we think that Richardson's allegations stated a claim upon which, if sustained by the proof, he will be entitled to relief. Permacel relies upon the requirement of Rule 9(b) of the Federal Rules of Civil Procedure,[5] and upon the required elements of fraud which have long been recognized and are set forth in Southern Development Company v. Silva, 125 U.S. 247, 250, 8 S.Ct. 881, 882, 31 L.Ed. 678:

---

2. On this issue, Richardson relies on Donahue v. Permacel Tape Corporation, 234 Ind. 398, 127 N.E.2d 235.

3. See 35 Am.Jur., Master & Servant, Section 19.

4. G. T. Fogle & Co. v. United States, 4 Cir., 135 F.2d 117, 120; 12 Am.Jur., Contracts, Sections 4, 5 & 6; 1 A.L.I. Restatement, Contracts, Section 5(a).

5. "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Rule 9(b), Federal Rules of Civil Procedure, 28 U.S.C.A.

*"First.* That the defendant has made a representation in regard to a material *fact;*

*"Secondly.* That such representation is false;

*"Thirdly.* That such representation was not actually believed by the defendant, on reasonable grounds, to be true;

*"Fourthly.* That it was made with intent that it should be acted on;

*"Fifthly.* That it was acted on by complainant to his damage; and,

*"Sixthly.* That in so acting on it the complainant was ignorant of its falsity, and reasonably believed it to be true."

The existence vel non of Permacel's satisfaction with Richardson's services and of its intention to continue his employment, so that in that sense his position was secure, were *facts*[6] material for consideration by Richardson in deciding whether to execute said agreement or not. The complaint alleges that those facts were knowingly and willfully misrepresented by Permacel's officers to Richardson, and that in reliance upon such false representations Richardson executed said agreement. If he can sustain his burden of proving such allegations, Richardson can recover from Permacel for any past or prospective loss of employment by reason of having been fraudulently induced to execute the "Sales Personnel Agreement."

If it was fraudulently procured, the entire agreement is void. Hence, it was not necessary for Richardson to allege that he had sought or had been refused Permacel's permission to enter the employment of a competitor, or that Permacel had threatened or attempted to enforce the provisions of the agreement restricting Richardson's employment. Though Permacel's counterclaim seeks the enforcement only of Paragraph numbered 1 of the agreement prohibiting Richardson from divulging confidential information, Permacel insists also that the district court erred in releasing and discharging Richardson from any part of the "Sales Personnel Agreement." It is possible that Richardson may be able to sustain his contention that the mere factual existence of the purported restrictive agreement, so long as it has not been finally and conclusively declared void or cancelled, coupled with Permacel's conduct with reference to the agreement, constitute effective barriers to his employment in his present vocation, and that he is not fitted for or cannot secure other suitable employment.

Until the facts have been developed by the evidence, we consider it premature to consider the many related questions; such as, the employee's duty in the absence of agreement not to divulge confidential information and trade secrets, the extent of liability, if any, of either party for damages, possible acts going to mitigate damages, and the validity vel non of the agreement.

The judgment is reversed and the cause remanded.

Reversed and remanded.

---

6. See 23 Am.Jur., Fraud & Deceit, Sec. 41; Prosser on Torts, 2nd ed., p. 563.