**Louis W. CHENAULT, Appellant,**

**v.**

**OTIS ENGINEERING CORPORATION,**
**Appellee.**

**No. 380.**

Court of Civil Appeals of Texas.

Corpus Christi.

Dec. 28, 1967.

Rehearing Denied Jan. 25, 1968.

Harry F. Maddin, of Cullen, Mallette, Maddin, Edwards & Williams, Victoria, for appellant.

Henry Nuss, III, and Leslie S. Lockett, of Kleberg, Mobley, Lockett & Weil, Corpus Christi, for appellee.

## OPINION

GREEN, Chief Justice.

This is a suit brought by appellee Otis Engineering Company for temporary and permanent injunctive relief, whereby it sought to have the court enforce a restrictive covenant that appellant Louis W. Chenault would not compete with appellee within a specified area for a specified period of time. Upon preliminary hearing, the court granted a temporary injunction, and after trial before the court and a jury entered judgment after verdict enjoining appellant from conducting business in competition with appellee in the Victoria area, defining the limits of such area all of which were within 100 miles of Victoria, for the duration of the time specified in the written agreement on which the suit was based, towit three years from the date of the execution of the agreement. This appeal is from such judgment.

The evidence shows that appellant had been in the employ of appellee in the latter's Victoria district approximately fourteen years, during which time he was trained in wire line operation in connection with

Otis' work in oil fields, in sales of appellee's oil field equipment, and in management. For the last twelve years, appellant had been in charge of Otis' Victoria operations, holding the position of district manager with direct responsibility for contacting customers and obtaining business for Otis. Appellee had operations throughout the United States and in Canada, and other foreign countries, and it was not unusual that employees would be transferred from one territory of employment to another.

In the Spring of 1966, appellee through its proper officials decided that appellant should be transferred to Corpus Christi, Texas, to be their district manager of that area. When appellee insisted upon such transfer, appellant, rather than move his family from Victoria, applied for a leave of absence. After conferences between appellant Chenault and representatives of Otis, a written agreement prepared by appellee's general counsel was entered into and executed, which reads as follows:

### "LEAVE OF ABSENCE AGREEMENT

THE STATE OF TEXAS }

COUNTY OF NUECES }

Know all men by these presents, that this memorandum of a contract made and entered into this 1st day of July, 1966 by and between LOUIS W. CHENAULT and OTIS ENGINEERING CORPORATION, hereinafter call 'Otis,' witnesseth:

Whereas, Louis W. Chenault desires that Otis grant him a one-year leave of absence from active employment; and

Whereas Otis desires to restrict Louis W. Chenault from competing with it in the Victoria area for three years;

Now, therefore, in consideration of the mutual promises herein contained, and for other good and valuable considerations, hereinafter set forth, Louis W. Chenault and Otis have agreed and, by these presents, do agree as follows:

1. As of the date of this contract Otis grants to Louis W. Chenault a leave of absence, not to exceed one year, to be employed as a life insurance salesman in the Victoria, Texas area, by Life Insurance Company of the Southwest.

2. Louis W. Chenault will transfer to Life Insurance Company of the Southwest and will begin participating in the Life Insurance Company of the Southwest benefit program (hospitalization, vacation, holidays, etc.) according to their company policy and his Otis benefits will not be in effect unless and until he should return to work at Otis.

3. Should Louis W. Chenault desire to return to employment at Otis during the period before the leave of absence expires, Otis will reemploy him in some capacity at one of the various company locations, consistent with Louis W. Chenault's physical condition at the time he should desire to return to work.

4. If Louis W. Chenault returns to Otis' employment prior to the expiration of the leave of absence, his seniority will be considered continuous and his various benefits will be renewed on the day of reemployment without the customary new employee waiting period, on the basis of his continuous seniority.

5. Louis W. Chenault agrees that for a period of three years from the date of this contract he will not do any work, perform any services or engage in any business in or within a 100-mile radius of Victoria, Texas, which competes in any way or manner with Otis.

WITNESS our hands affixed to duplicate copies, each of which shall have full dignity and force as an original.

/s/ Louis W. Chenault
LOUIS W. CHENAULT

OTIS ENGINEERING CORPORATION

By: /s/ E. E. Pearson"

———◆———

Appellant's last day of active employment by Otis was June 30, 1966. He received no pay after that date. As noted in the above instrument, he became a life insurance salesman in the Victoria area for several months. This did not prove to be a success. In November, 1966, he indicated an interest in returning to active service with appellee, which advised him of several locations at which there were openings, and offered him employment. Attention is called to jury findings 1, 3, and 11, infra. He declined all of these. In November, appellant purchased a wire-line truck and other equipment for the purpose of going into business for himself in the Victoria area in competition with appellee. When a request for a line of credit was made by him to Otis, appellee through its general counsel and vice-president replied by letter dated December 9, declining such credit, pointing out paragraph 5 of the agreement above copied, and stating:

" * * * Since purchase of Otis equipment for this purpose would be in violation of the provisions of our agreement, we cannot approve your request for a line of credit and, additionally, I want to take this opportunity to confirm in writing my statement during our telephone conversation that if you violate any of the provisions of our agreement of July 1, 1966, Otis will take such action as may be necessary to exercise those rights and remedies available to the company in accord with the provisions of our agreement."

Nevertheless, appellant obtained the necessary equipment, and admittedly did do business in the Victoria district, all of which was within 100 miles of Victoria, in competition with appellee Otis, and continued to do so until temporarily restrained following a hearing in the trial court in this suit on January 30, 1967. On December 30, 1966, he submitted to Otis a letter of resignation from his leave of absence with Otis, effective January 1, 1967.

In answer to special issues, the jury found as follows:

(1) When Louis Chenault inquired of Otis about jobs he could have, Otis was ready and able to perform the obligation in the leave of absence agreement to reemploy him in some capacity at one of the various company locations consistent with the said Chenault's physical capacity;

(2) There was legal consideration given by Otis to Chenault for the execution by Chenault of the leave of absence agreement containing the provision that Chenault would not engage in competition with Otis;

(3) Chenault's inquiries to Otis about resuming performance by him of duties for Otis were made as a good faith effort by him to resume work for Otis;

(4) If Chenault engages in work in the territory included within Otis' Victoria, Texas, district in competition with Otis, such work will be damaging to Otis;

(5) E. E. Pearson did not represent to Chenault prior to Chenault's execution of the leave of absence agreement that the provisions in the agreement relating to non-competition were a mere formality and would not be enforced;

(11) Otis Engineering Corporation has not failed to offer Louis Chenault re-employment in a position consistent with his background and experience; and

(12) $4800 has been lost by Chenault in net profit due to Chenault's inability to perform wireline services in the Victoria area from February 7, 1967, until May 17, 1967.

Appellant bases his appeal on four points of error, as follows:

## POINT ONE

The Trial Court erred in entering judgment for Appellee because the contract relied upon is void and contrary to public policy since it constitutes an invalid restraint of trade.

## POINT TWO

The Trial Court erred in entering judgment for Appellee because there was no consideration to support the contract upon which suit was based.

## POINT THREE

The Trial Court erred in entering judgment for Appellee because there is no evidence, or alternatively, insufficient evidence that the restrictions sought to be imposed upon Appellant are reasonable and necessary or that Appellee would be damaged.

## POINT FOUR

For all the reasons stated in the preceding points, the Trial Court erred in not entering judgment for Appellant dissolving the temporary injunction and awarding Appellant his damages.

 The rule is well established in Texas that non-competition clauses in contracts pertaining to employment are not normally considered to be contrary to public policy as constituting an invalid restraint of trade.

"There was a time in our jurisprudence when covenants not to compete were held to be unenforceable because in restraint of trade and contrary to public policy. However, under the customs and usages of modern business practice it is now well established that contracts ancillary to employment involving trades or professions are enforceable, though amounting to limited restraint of trade, where they are reasonably limited as to time and space. Some cases even go so far as to uphold such restrictive covenants, even in the absence of a time limitation, where the agreement is reasonably limited as to area. 13 Tex.Jur.2d Section 189, Pages 398–400, Krueger, Hutchinson & Overton Clinic v. Lewis (Tex.Civ.App.), 266 S.W.2d 885, affirmed 153 Tex. 363, 269 S.W.2d 798; Randolph v. Graham, Tex.Civ.App., 254 S.W. 402; 58 A.L.R. 168. * * *" John L. Bramlet & Company v. Hunt, Tex.Civ.App., 371 S.W.2d 787, 788 (Dallas, 1963), writ ref'd. n. r. e.

"The courts of this State have in numerous cases enforced negative restrictive covenants not to compete when ancillary to employment involving trades or professions although such covenants may be in limited restraint of trade, provided they are reasonably limited as to duration and area. Patterson v. Crabb, Tex.Civ.App.1889, 51 S.W. 870, error dism.; John L. Bramlet & Co. v. Hunt (1963), Tex.Civ.App., 371 S.W.2d 787, writ ref., n. r.

e.; McAnally v. Person (1933), Tex.Civ. App., 57 S.W.2d 945 writ ref.; Bettinger v. North Fort Worth Ice Co., Tex.Civ.App., 278 S.W. 466; Lewis v. Krueger, Hutchinson & Overton Clinic, 1954, 153 Tex. 363, 269 S.W.2d 798; Traweek v. Shields, Tex.Civ.App.1964, 380 S.W.2d 131; Wilson v. Century Papers, Inc., Tex.Civ.App.1965, 397 S.W. 2d 314; Jennings v. Shepherd Launddries Co., Tex.Civ.App.1925, 276 S.W. 726 error dism.; Randolph v. Graham, Tex.Civ.App., 254 S.W. 402; 58 A.L.R. 168. * * *" Carl Coiffure, Inc. v. Mourlot, Tex.Civ.App., 410 S.W.2d 209, 211 (Houston, 1966) writ ref'd, n. r. e.

Appellant, recognizing the general rule as above stated, argues under its first point of error that the agreement by appellant not to compete, paragraph 5 of the contract, is void and contrary to public policy because (1) the stated purpose is to restrain appellant from competing with appellee, and (2) the provision was not ancillary to an employment contract because it was not executed as a condition of beginning work with Otis, but at the time of termination of employment, and after appellant had left Otis' employ and had gone to work for the insurance company.

In support of his point, appellant cites 17 C.J.S. Contracts, § 254, p. 1151, as follows:

"In accordance with the rules stated supra § 246 that a restraining covenant to be valid must be incidental to a lawful contract under which the covenantee acquires an interest requiring protection, an independent agreement concluded after termination of employment not to enter into a competitive employment is invalid."

Eight non-Texas cases are cited in C.J.S. in the footnote to this statement of which appellant relies on four, they being Arthur Murray Dance Studios of Cleveland v. Witter, Ohio Com.Pl., 105 N.E.2d 685, 695; Bond Electric Corporation v. Keller, 113

N.J.Eq. 195, 166 A. 341; Paramount Pad Co. v. Baumrind, 4 N.Y.2d 393, 175 N.Y.S. 2d 809, 151 N.E.2d 609; Rabinowitz v. Tillman, 19 Misc.2d 1094, 192 N.Y.S.2d 535.

█ Neither the quote from C.J.S. nor any of these cited authorities support appellant's contentions under the facts of the present case, since the non-competition provision here sought to be enforced was not an independent agreement unconnected with a contract concerning employment concluded after termination of employment. Texas appellate courts have consistently upheld injunctions enforcing non-competition clauses in agreements concerning employment which were entered into after the beginning of employment, the announced requirements being that the agreement be ancillary to employment, be reasonable, and be based on consideration. Ofsowitz v. Askin Stores, Inc., Tex.Civ.App., 306 S.W.2d 923, wr.ref.; Houston Credit Sales Co. v. English, Tex. Civ.App., 139 S.W.2d 163, n. w. h.; McAnally v. Person, Tex.Civ.App., 57 S.W.2d 945, wr.ref.; Bettinger v. North Fort Worth Ice Co., Tex.Civ.App., 278 S.W. 466, n. w. h.; Credit Bureau Management Company v. Huie, 254 F.Supp. 547 (E.D.Ark.1966); Richardson v. Permacel Tape Corp., 5th Cir., 244 F.2d 80. We quote as follows from the Credit Bureau case, 254 F.Supp. p. 554:

"Judged by Texas law, which in this particular connection does not seem to differ from that of Arkansas, the fact that Huie was continued in the employ of plaintiff was sufficient consideration for his execution of the agreement. [John L.] Bramlett [Bramlet] & Co. v. Hunt, supra; McAnnally [McAnally] v. Person, Tex.Civ. App., 57 S.W.2d 945, wr. ref. * * *"

The following are some out of state cases holding valid a non-competition restriction in a contract pertaining to employment, but entered into after the employment had ceased; Novelty Bias Binding Co. v. Shevrin, 1961, 342 Mass. 714, 175 N.E.2d 374; World Wide Pharmacal Distributing Co. v. Kolkey, 1955, 5 Ill.App.2d 201, 125 N.E.2d 309; DeLong Corporation v. Lucas, S.D.

N.Y.1959, 176 F.Supp. 104; Continental Paper Grading Co. v. Howard T. Fisher & Associates, Inc., 1954, 3 Ill.App.2d 118, 120 N. E.2d 577.

■ A leave of absence is not a complete separation from employment; it connotes a continuity of the employment status, during which time performance of the duties of his work by the employee and remuneration by employer and other fringe benefits may be suspended. Southwestern Bell Telephone Company v. Thornbrough, 232 Ark. 929, 341 S.W.2d 1, 3–4; Diehl v. Lehigh Valley R. Co., 3rd Cir., 211 F.2d 95, 99; State ex rel. Cutright v. Akron Civil Service Commission, 95 Ohio App. 385, 120 N.E.2d 127, 130; Ward v. Keenan, 3 N.J. 298, 70 A.2d 77, 83; Michigan Employment Security Commission v. Vulvan Forging Company, 375 Mich. 374, 134 N.W.2d 749, 752; State ex rel. Mc-Gaughey v. Grayston, 349 Mo. 700, 163 S. W.2d 335, 341.

■ It appears clear to us that appellant did not intend to terminate definitely all claims or rights with reference to employment by appellee when he executed this agreement. Though it was signed after he had begun to work for the insurance company, his original request that he be granted leave of absence was made while he was still on the payroll of appellee. He was under no obligation to enter into this contract with appellee; there was no pressure upon him to agree to the non-competition provision, except his own desire and intention to keep an avenue open to have and resume work if his insurance proposition failed. When he was unable to secure the position he wanted with appellee, as he testified to, he "resigned" from the leave of absence by letter dated December 30, 1966. There would have been no purpose of his resigning except his own recognition that, being on a leave of absence, his employment status had not entirely ceased, and that he had established rights and benefits by reason of the contract. We hold that by virtue of the very terms of the Leave of Absence Agreement, the restraining covenant not to com-

pete, being paragraph 5 thereof, was ancillary to and connected with his employment status with appellee. Appellant's first point is overruled.

Appellant's argument on his second point of no consideration is based on his contention that the Leave of Absence Agreement contained (1) no definite job offer; (2) no stipulated salary; (3) no period of time for which employment is assured; (4) no provision for what happens if appellant is not physically qualified to work for Otis; (5) no specification as to the type of work to be done or the location in which the work is to be performed.

■ We here call attention to the findings of the jury on the issue of consideration, supra. The granting of the leave of absence, connoting a continuity of certain employment rights, would constitute consideration. Appellee agreed that in the event appellant accepted active re-employment under the agreement, his seniority would be considered continuous and his various benefits would be renewed on the day of re-employment without the customary new employee waiting period, on the basis of his continued seniority. Otis' witnesses testified in detail about the value of these benefits to appellant should he exercise his option under the contract of returning to active employment with appellee. It is true that there was no agreement that his position would be of the same or equal classification with that of district manager and there was nothing definite as to the duration of such employment, or the salary, but appellant voluntarily took his chances on such matters with his eyes open when he requested the leave of absence and signed the agreement.

As the court stated in Ofsowitz v. Askin Stores, supra, 306 S.W.2d 923, 924 in which the Supreme Court refused a writ of error:

"We overrule appellant's contention that because of the provision of the contract to the effect that his employment as manager was at the will of the corporation

which was not bound to employ him for any specific length of time, the restrictive covenant in question which was not to take effect until after his employment was ended, was without consideration and therefore unenforceable. This identical question was decided adversely to appellant's contention in the case of Krueger, Hutchinson and Overton Clinic v. Lewis, Tex.Civ.App., 266 S.W.2d 885, affirmed 153 Tex. 363, 269 S.W.2d 798. See also McAnally v. Person, Tex.Civ.App., 57 S. W.2d 945 (Writ Ref)."

See also, Carl Coiffure, Inc. v. Mourlot, supra, 410 S.W.2d 209, wr.ref. n. r. e. Appellant's second point is overruled.

By his third point, appellant says there was no evidence or, alternatively insufficient evidence, that the restriction as to competition was necessary or reasonable, or that appellee would be damaged by a breach thereof. We call attention to the jury's finding, No. 4, that Otis would be damaged by such breach.

 Chenault testified that all of his training in the wire line business had come from Otis; that obtaining business was largely a matter of personalities, and that as manager in the Victoria district for twelve years, he had made it his business to become well acquainted in his social and business life with Otis' customers, and had worked hard on developing his relationship with them. By virtue of such contacts appellant testified that he would be in a better position to compete with appellee in the Victoria district than elsewhere. The likelihood of continuing damage to appellee was shown by the evidence. Carl Coiffure, Inc. v. Mourlot, supra.

In determining the reasonableness of a restrictive contract provision the courts will ordinarily pass upon the question as a matter of law, and it was not necessary that the issue be submitted to the jury. Lewis v. Krueger, Hutchinson and Overton Clinic, 153 Tex. 363, 269 S.W.2d 798; Weatherford Oil Tool Co. v. Campbell, 161

Tex. 310, 340 S.W.2d 950; Spinks v. Riebold, Tex.Civ.App., 310 S.W.2d 668, wr.ref.; Eubanks v. Puritan Chemical Company, Tex.Civ.App., 353 S.W.2d 90, 92, wr.ref. n. r. e.; Vaughan v. Kizer, Tex.Civ.App., 400 S.W.2d 586, 589, wr.ref. n. r. e.; Caraway v. Flagg, Tex.Civ.App., 277 S.W.2d 803; Barrett v. Curtis, Tex.Civ.App., 407 S.W.2d 359, 361, n. w. h.

The injunction was restricted to the territory included in the Victoria district all of which is less than 100 miles from the City of Victoria, and the duration was fixed at that provided in the contract, i. e., three years from July 1, 1966. One-half of that period has expired.

Appellant's third point is overruled.

Our rulings have made it unnecessary to discuss further appellant's contentions under his fourth point, and same is overruled.

Judgment affirmed.