Willie L. THURMAN, Plaintiff–Appellant,

v.

SEARS, ROEBUCK & CO., Defendant–Appellee.

No. 91–1026.

United States Court of Appeals, Fifth Circuit.

Jan. 30, 1992.

Rehearing and Rehearing En Banc Denied Feb. 28, 1992.

Allan G. King, Johnson & Gibbs, Dallas, Tex., for plaintiff-appellant.

E. Thomas Bishop, Darryl J. Silvera, Dallas, Tex., for defendant-appellee.

Before KING, JOHNSON and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Appealing the district court's grant of summary judgment in favor of Sears on statute of limitations grounds, Willie L. Thurman, former Sears employee, contends that a fact issue exists as to the actual date of his termination from employment. Finding that Thurman failed to present summary judgment evidence to create a genuine issue of material fact, we affirm.

I

Willie L. Thurman began his employment with Sears in November 1977. He worked at Sears' Dallas Merchandise Distribution Center (DMDC) as a manual laborer—both as a "receiver" where he unloaded merchandise from a truck, and as a "merchandise handler" where he moved returned goods for further processing.

The evidence indicates that, beginning in 1985, Thurman suffered a series of job-related injuries. Thurman claims that after each of these injuries, Sears placed him on leave of absence and reinstated him when he demonstrated that he was again able to perform his job duties. In March 1986, Thurman sustained the injury about which he now complains. Following this injury, Sears placed Thurman on a medical leave of absence, and Thurman filed a claim for workers' compensation. Thurman asserts that he was ready to go back to work at Sears in June 1986. Because of restrictions imposed by his doctor, however, Thurman was unable to perform the duties of a heavy merchandise handler and, therefore, Sears assigned him to a job where he swept floors and performed other light duties.

In 1987, Sears began a reorganization of the DMDC workforce and, in April 1987, as part of this reorganization, Sears asked Thurman to voluntarily terminate his employment. Thurman declined and continued as a light merchandise handler until May 1987, when he was informed that his light duty job was eliminated.[1] According

---

1. In May 1987, as part of the reorganization, Sears also laid off more than 180 other full-time DMDC employees, 26 of whom were offered non-voluntary severance allowance packages. According to Sears, the least productive and least dependable employees in DMDC were laid off under the plan. Under the non-voluntary severance allowance plan, Thurman was afforded health benefits provided he continued to pay the premiums for the benefits. Sears claims that, in order for Thurman to continue to receive these benefits, Sears administratively listed Thurman as being on a leave of absence. Thus, Thurman received full benefits under the terms of the severance allowance plan even

to Thurman, Sears informed him at that time that he was being placed on a leave of absence.

Thurman's last day at Sears was May 18, 1987. The next day, Thurman filed a claim for unemployment benefits with the Texas Employment Commission. A few weeks later, on June 5, Thurman executed a release and waiver. On that same date, Thurman signed a document acknowledging that he was placed on leave of absence and that he received a lump-sum payment in consideration for signing these documents.[2] Thurman claims that, after recovering fully from his injury, he could once again perform heavy lifting, and therefore, in December 1987, and again in January 1988, Thurman contacted Sears, seeking to be reinstated to his job as a heavy merchandise handler. Sears, however, denied Thurman's request on both occasions and, in May 1988, Thurman received notification from Sears that his leave of absence from Sears expired on May 19, 1988.

On July 17, 1989, Thurman brought suit against Sears in Texas state court, asserting a cause of action under article 8307c of the Texas Revised Civil Statutes. *See* Tex. Rev.Civ.Stat.Ann. art. 8307c, § 1 (West Supp.1991). Thurman alleged that:

> [A]fter Plaintiff recovered from his injuries, and requested on at least two occasions to return to work, Sears refused to reinstate him and continued him on leave of absence. In May of 1988, Sears terminated his employment, ostensibly be-

cause his one year's leave of absence had expired. Plaintiff would show that the true reason for his discharge by the Defendant was in retaliation for filing a claim under the Workers' Compensation Act. . . .

Record on Appeal at 7, *Willie L. Thurman v. Sears, Roebuck & Co.*, No. 91–1026 (5th Cir. filed Jan. 23, 1991) (Plaintiff's Original Petition) ["Record on Appeal"].

Sears timely answered the state court lawsuit, raising the statute of limitations as an affirmative defense and, subsequently, removed the case to federal court. Sears filed its initial Motion to Dismiss and Alternative Motion for Summary Judgment, urging three grounds for dismissal of Thurman's lawsuit: (i) Thurman's claim was barred by limitations; (ii) Thurman released all claims against Sears relative to the termination of his employment; and (iii) Thurman's termination was not in retaliation for the filing of the workers' compensation claim.[3] The district court denied Sears' motion because it found Thurman had not had time to complete adequate discovery. Sears then filed an Amended Motion to Dismiss and Alternative Motion for Summary Judgment, which, in addition to asserting the defenses of limitations, release and a lack of a causal relationship between Thurman's termination and Thurman's filing of a workers' compensation claim, also asserted that Thurman's claim is preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* (ERISA).[4] Sears then filed

---

though he stopped working at Sears on May 18, 1987.

**2.** *See* Appellant's Record Excerpts at tab 18, *Willie L. Thurman v. Sears, Roebuck & Co.*, No. 91–1026 (5th Cir. filed Mar. 4, 1991) (Employee Request of Service Allowance Selection) ["Appellant's Record Excerpts"]. The line accompanying the box checked on the "Employee Request of Service Allowance Selection" reads "Lump Sum/Leave of Absence." *Id.*

**3.** Sears alleged that Thurman was terminated because of the closing of a Sears' unit and Thurman's poor job performance.

**4.** Sears has also raised the ERISA preemption issue on appeal. However, at the outset, we find that Sears' failure to file a notice of cross-

appeal precludes our review of its contention that the district court erred in concluding that ERISA does not preempt Thurman's state law claim. *See Memorial Hosp. System v. Northbrook Life Ins. Co.*, 904 F.2d 236, 239 n. 2 (5th Cir.1990) ("Although [defendants] complain on appeal that the district court erred in its conclusion that ERISA does not preempt [plaintiff's] state law claims … neither defendant has filed a notice of cross-appeal as a prerequisite to raising this argument."), *citing* Fed.R.App.P. 4(a); *see also Shipp v. General Motors Corp.*, 750 F.2d 418, 428 (5th Cir.1985) ("the filing of a notice of appeal is a 'mandatory precondition' to our exercise of jurisdiction"). Sears did not preserve by notice of cross-appeal its claim that the district court erred in concluding that ERISA does not preempt Thurman's state law claims. Therefore, as in *Northbrook*, we find

a Supplemental Motion to Dismiss and Alternative Motion For Summary Judgment. The district court granted Sears' Supplemental Motion, concluding Thurman's lawsuit was barred by limitations because Thurman's cause of action accrued on May 18, 1987.[5] Thurman appeals from that order granting summary judgment.

## II

■ Because this case is an appeal from summary judgment, we review the record de novo. *See Guthrie v. Tifco Industries*, 941 F.2d 374, 376 (5th Cir.1991). Summary judgment is proper if the movant demonstrates the absence of genuine issues of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The movant accomplishes this by identifying portions of the record which reveal that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. Upon such a showing, the burden is then shifted to the nonmovant, who "must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (emphasis in original), *quoting* Fed.R.Civ.P. 56(e). We examine the affidavits, pleadings, depositions and answers to interrogatories that were before the trial court to determine whether there is an absence of any genuine issues of material fact. *See Randolph v. Laeisz*, 896 F.2d 964, 969 (5th Cir.1990). When "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356 (citation omitted).

## III

Thurman appeals the summary judgment in Sears' favor, contending: (a) that a fact issue exists as to the actual date of his termination from employment; (b) that, in the alternative, Sears should be equitably estopped from asserting that the limitations period began before he sought reinstatement in December 1987; and (c) that, if this court finds Thurman was terminated in May 1987, then Sears' refusal to rehire him constitutes "discrimination in any other manner."

## A

■ Article 8307c of the Texas Revised Civil Statutes is one of Texas' statutory exceptions to the common-law doctrine of employment-at-will. *See Winters v. Houston Chronicle Pub. Co.*, 795 S.W.2d 723, 724 n. 1 (Tex.1990); *see also Azar Nut Co. v. Caille*, 734 S.W.2d 667, 669 (Tex.1987) (Spears, J., concurring and dissenting). The statute provides:

> No person may discharge or in any other manner discriminate against any employee because the employee has in good faith filed a claim, hired a lawyer to represent him in a claim, instituted or caused to be instituted, in good faith, any proceeding under the Texas Workmen's Compensation Act, or has testified or is about to testify in any such proceeding.

Tex.Rev.Civ.Stat.Ann. art. 8307c, § 1 (West Supp.1991). An aggrieved employee who wishes to file suit under this statute has two years within which to institute litigation after her cause of action accrues. *See Luna v. Frito–Lay*, 726 S.W.2d 624, 625 (Tex.App.—Amarillo 1987, no writ); *see also Smith v. Coffee's Shop for Boys and Men*, 536 S.W.2d 83, 84 (Tex.Civ.App.—Amarillo 1976, no writ). Under article

---

that the question whether the district court erred in concluding that ERISA does not preempt plaintiff's state law claims must remain unresolved.

**5.** The district court reasoned:
   [O]n May 18, 1987, all the elements of Plaintiff's claim existed: he had already filed a worker's compensation claim over a year be-

fore, discriminatory action had been taken against him by laying him off, and he believed that he had been discharged in retaliation for his injuries.... It may well be true that Plaintiff did not at that time know the name for his cause of action, but he certainly had all the facts to take to a lawyer.
Record on Appeal at 606 (Memorandum Opinion and Order).

8307c, a cause of action accrues when facts exist authorizing the employee to seek judicial relief. *See Luna,* 726 S.W.2d at 628.

In *Smith v. Coffee's Shop for Boys and Men,* the court of appeals found Smith's action under article 8307c barred by limitations.[6] Smith alleged that Coffee's unlawfully refused to permit her to return to work because she had filed a workers' compensation claim, and she asserted that her cause of action should not be barred by limitations because the last refusal to reinstate employment by Coffee's was within the two-year limitations period. The court disagreed, concluding that "Smith's cause of action under the statute was for discriminatory discharge and not for Coffee's refusal to later re-employ her." *Smith,* 536 S.W.2d at 85. The *Smith* court, while it did not expressly articulate a standard to determine when a cause of action accrues under article 8307c, stated that "the acts statutorily condemned are those occurring during the employment, and not afterwards." *Id.* Therefore, the court determined that Smith's cause of action for discriminatory discharge necessarily accrued, at the latest, when Coffee's asked Smith to return to work and Smith refused and instead went on vacation.

In 1987, in *Luna v. Frito–Lay,* the court of appeals addressed another appeal involving a lawsuit under article 8307c.[7] This time, the court articulated a standard designed to isolate the accrual date of a cause of action under article 8307c. The court, holding that causes of action brought under article 8307c are governed by a two-year statute of limitations, concluded that a plaintiff's cause of action accrues when facts authorizing the plaintiff to seek judicial relief are available.[8] *See Luna v. Frito–Lay,* 726 S.W.2d 624, 628 (Tex.App.—Amarillo 1987, no writ), *citing Williams v. Pure Oil Co.,* 124 Tex. 341, 78 S.W.2d 929, 931 (1935) (cause of action accrues when facts exist authorizing the assertion of a claim for relief); *Lowery v. Juvenal,* 559 S.W.2d 119, 121 (Tex.Civ.App.—Amarillo 1977, *writ ref'd n.r.e.*) (cause of action under former article 5526 accrues and limitations period begins when facts exist authorizing claimant to seek judicial relief).

**B**

█ Thurman argues that the facts of *Luna* are "virtually analogous" to the instant case and suggests that the court found that Luna's cause of action accrued "when the employee was denied reinstatement" and, therefore, Thurman's cause of action should be deemed to have accrued when Sears denied Thurman's December request for reinstatement. While we find the facts of *Luna* to be similar to those in this case, we believe that Thurman misconstrues the true import of *Luna.* In *Luna,* the court did not find the mere denial of Luna's request for reinstatement as the

**6.** The facts in *Smith* involve a plaintiff who sustained an on-the-job injury and filed a workers' compensation claim. After Smith's doctor advised her that she was physically able to return to work at Coffee's, Coffee's asked Smith to return to work immediately. Instead of then returning to work, Smith used two weeks of accrued vacation time. At some point during those two weeks, Coffee's hired a replacement for Smith's position. Upon her return from vacation, Smith sought to return to work at Coffee's and Coffee's denied her request. Thereafter, Smith made numerous other requests, spanning approximately one-and-a-half years, which Coffee's refused.

**7.** Luna, after sustaining an on-the-job injury, left work for a period of approximately 180 days, during which time he received workers' compensation. In April 1983, upon his release for light-duty work, Luna was informed by Frito–Lay that such work was unavailable. Because Luna's doctor told him that he could return to work with a full release if he lost some weight, Luna lost thirty pounds and then contacted Frito–Lay in May to inform the company of his weight loss and that he could do heavy lifting. Frito–Lay told Luna at that time, however, that someone else had been hired for the job and the company could no longer use him. Several months later, in September, after Luna had actually received a full release from his physician, Luna spoke with a Frito–Lay bookkeeper informing her that he could return to work. The bookkeeper informed Luna at that time that Frito–Lay had hired another employee for the job. Luna filed suit under article 8307c.

**8.** The court then found that Luna's suit for wrongful discharge was barred by limitations because his discharge occurred in May when he was told that he had been replaced and the company could not use him anymore.

event which gave rise to Luna's cause of action; instead, the court determined that Luna was discharged at the time his request for reinstatement was denied because he was then told that Frito–Lay could not use him anymore and he had been replaced. The court found also that Luna "himself took this to be a discharge because the only other time he spoke with [Frito–Lay] after receiving a full work release was when he returned a telephone call from [Frito–Lay's] bookkeeper." *Luna*, 726 S.W.2d at 628. Accordingly, because a denial of a request for reinstatement—whether it occurs after a leave of absence or a termination—is not the benchmark by which we determine the accrual date of a cause of action under article 8307c, we must focus on the time when Thurman received notice of his termination. *See id.* (noting "that accrual of an action for termination of employment under federal statutes occurs when the employee is informed that his employment will be terminated, not when it actually is terminated", *citing Delaware State College v. Ricks*, 449 U.S. 250, 258–59, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980)).

### C

▮ Although we sit as an *Erie* court, we follow *Luna's* suggestion and examine federal case law to determine the accrual date for an action under article 8307c. Thurman also suggests we should follow *Luna* in that regard, citing *Naton v. Bank of Cal.*, 649 F.2d 691 (9th Cir.1981); *Bonham v. Dresser Indus.*, 569 F.2d 187 (3d Cir.1977) *cert. denied*, 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1978), and argues that an employer's acts or words must "clearly notify" or give "unequivocal notice" to the employee that he is discharged in order for that employee to be informed of the termination and in order for the limitations period to begin under article 8307c.

In *Bonham*, the Third Circuit addressed an appeal under the ADEA where the plaintiff received notice of his termination and stopped working on October 31 yet continued to receive certain benefits until December 31. The court, examining the date of plaintiff's termination for purposes of determining whether plaintiff filed a charge with the Secretary of Labor within the federal 180–day period, held that "where unequivocal notice of termination and the employee's last day of work coincide, then the alleged unlawful act will be deemed to have occurred on that date, notwithstanding the employee's continued receipt of certain employee benefits such as ... extended insurance coverage." *Bonham*, 569 F.2d at 191, *citing Payne v. Crane Co.*, 560 F.2d 198, 199 (5th Cir.1977) (per curiam) (discharge occurs when employer shows, by acts or words, clear intention to dispense with employee's services) (other citations omitted). The *Bonham* court also expressly disapproved of any rule which focused on an employer's official termination date, reasoning:

> a company may use different termination dates for different purposes.... Moreover, we would be wary of any approach which determines the timeliness of an employee's suit against his employer solely on the basis of records which are within the exclusive control of the employer. On the other hand, we would also view with disfavor a rule that penalizes a company for giving an employee periodic severance pay or other extended benefits after the relationship has terminated rather than severing all ties when the employee is let go.

*Id.* at 191–92.

Looking to *Bonham*, the court in *Naton v. Bank of Cal.*, 649 F.2d 691 (9th Cir. 1981), enunciated a rule which isolated the accrual date of a cause of action under the ADEA. In *Naton*, the plaintiff was notified of his termination and stopped working for his employer on January 17. Naton, however, was officially terminated for administrative purposes on May 2, which was the "effective termination" date entered on his employer's separation report and the date Naton stopped drawing separation pay. In determining the accrual date of his cause of action, the Ninth Circuit held that "when unequivocal notice of termination and the last day of work coincide, the alleged unlawful practice occurs on that date." *Naton*, 649 F.2d at 695.

The court then concluded that those events coincided on January 17, 1985. *Id.*

We find the *Bonham* test—"where unequivocal notice of termination and the employee's last day of work coincide, then the alleged unlawful act will be deemed to have occurred on that date"—will serve to eliminate ambiguities as to the commencement date of the limitations period and should be utilized in determining when facts exist authorizing a claimant to seek judicial relief for wrongful termination under article 8307c. Because federal law in this regard is consistent with state law, we hold that the limitations period for a suit for wrongful termination under article 8307c will commence when the employee receives unequivocal notice of his termination or when a reasonable person would know of the termination. *See Bonham v. Dresser Indus.*, 569 F.2d 187, 192 (3d Cir.1977) *cert. denied,* 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1978) (test is not entirely subjective and limitations period begins when employee knows or a reasonable person should know that employer has made final decision to terminate him and employee renders no further services).

### D

■ Applying this test to the case before us, we must determine the date on which Thurman received unequivocal notice of his termination or when a reasonable person would have known that he was terminated. *Id.*

### 1

Thurman argues that he timely filed suit within the two-year limitations period because he was not actually discharged from Sears until December 1987—the time when Sears refused to reinstate him after what Thurman regarded a leave of absence.[9] Thurman asserts that a leave of absence is not a discharge sufficient to start the running of the statute of limitations since it is not unequivocal notice of a termination. Moreover, Thurman argues, he did not have such unequivocal notice of the discharge until December 1987—the time he sought reinstatement to Sears. For support, Thurman refers to the following: (i) Thurman's own testimony that he was told that he was being placed on leave of absence beginning May 19;[10] (ii) Sears' past practices which, Thurman alleges, led him to believe he would be reinstated following the leave of absence;[11] (iii) the fact that no one at Sears told Thurman that he was terminated at any time prior to Sears' refusal to reinstate him;[12] (iv) a letter dated

9. Thurman does not claim that the "leave of absence" of May 18, 1987 itself constituted discriminatory action sufficient to authorize Thurman to seek judicial relief. Rather, Thurman contends that Sears' actions constituted violations of the Texas workers' compensation laws by refusing to rehire or reinstate him when he was able to return to his original job.

10. In his First Affidavit, Thurman states that "[i]n May of 1987, I was informed that my job performing light duty was being eliminated. At that time my back had not yet healed to the point where I could resume my regular job doing heavy lifting. Consequently, Sears placed me on a medical leave of absence, beginning May 19, 1987." Appellant's Record Excerpts at tab 6, *Willie L. Thurman v. Sears, Roebuck & Co.,* No. 91–1026 (5th Cir. filed Mar. 4, 1991) (Thurman's First Affidavit) ["Appellant's Record Excerpts"]. In his Second Affidavit, Thurman states that "[i]n May of 1987, I was informed that my job performing light duty work was being eliminated, and that I was therefore being placed on a leave of absence, beginning May 19, 1987, until such time as I was capable of doing

heavy lifting. At that time, it was my understanding that I was not permanently separated from Sears and could return to work in the future." Appellant's Record Excerpts at tab 7.

11. Thurman claims that, in the past, he was routinely placed on leaves of absence when injured and then reinstated after he fully recovered. Thurman claims that Sears' actions were facially neutral in that, when his light duty job was eliminated because of the reorganization, it was entirely consistent with Sears' past practices for Sears to place Thurman *temporarily* on leaves of absence until he could perform heavy lifting. *See* Appellant's Record Excerpts at tab 6 (Thurman's First Affidavit).

12. Thurman claims that no one told him that his May 18 leave was any different from his previous leaves of absence. *See* Appellant's Record Excerpts at tab 7 (Thurman's Second Affidavit). Sears admits that no writing unequivocally informed Thurman of any distinction. *See* Appellant's Record Excerpts at tab 23 (Deposition of Gwen Chandler).

June 9, 1987, informing Thurman that his leave of absence would expire on May 19, 1988; (v) a Sears' letter received by Thurman in May 1988, which informed Thurman that his leave of absence expired on May 19, 1988; and (vi) the unit closing severance allowance plan which Thurman did not interpret to be notice of his termination.[13]

Sears contends that Thurman's claim is barred by the two-year statute of limitations because Thurman knew he was terminated from his employment with Sears on May 18, 1987 when Thurman's job was eliminated pursuant to a reduction in force, or, at the latest, on June 5—the date on which Thurman executed a full release and waiver of claims relative to the termination of his employment with Sears. Sears contends that Thurman's knowledge of his termination on May 18 is well-supported by the evidence in the record, including the following: (i) Thurman ceased working at Sears on May 18; (ii) testimony of Gwen Chandler, Sears Personnel Administrator, that she informed Thurman of his termination from Sears;[14] (iii) testimony of Susan Blanchard, the manager of the department in which Thurman worked, that Thurman was terminated as of May 18; (iv) Thurman's own testimony that he was told as of May 18 that he was no longer employed at Sears;[15] (v) the fact that Thurman filed a claim for unemployment benefits with the Texas Employment Commission on May 19;[16] (vi) the finding made by the Texas Employment Commission;[17] (vii) the release and waiver of all claims related to his employment at Sears which Thurman executed on June 5;[18] (viii) the cash and

---

13. Thurman argues that the unit closing severance allowance plan did not provide him with notice of his discharge. The paragraph defining an employee's status under that plan is captioned *"Leave of Absence."* It recites, in part: "The leave of absence will terminate upon the earliest of one year from the leave beginning date, death, resignation, retirement or employment in another Sears unit, subsidiary or Business Group." Appellant's Record Excerpts at tab 24 (Sears Unit Closing Severance Allowance Plan). Thurman contends this language does not provide unequivocal notice of discharge. Rather, Thurman argues, it defines as eligible those employees "whose jobs are eliminated"—not those who are discharged. Thurman contends that his light duty job was eliminated and that this does not require or equate to his discharge. It is also Thurman's position that this document does not establish a discharge because, according to Thurman, the evidence shows that, on May 18, Thurman refused to participate in the plan or accept any of its benefits. Thurman claims that it was not until June 5 that Thurman agreed, under duress, to sign the release required by the plan.

14. More specifically, Gwen Chandler testified: Willie Thurman's employment with Sears ceased as of the end of business on May 18, 1987. Mr. Thurman was so notified of his termination by me and by his supervisor, Susan Blanchard, on May 18, 1987.
Appellee's Record Excerpts at tab 10, *Willie L. Thurman v. Sears, Roebuck & Co.*, No. 91–1026 (5th Cir. filed April 1, 1991) (Supplemental Affidavit of Gwen Chandler) ["Appellee's Record Excerpts"]; Appellee's Record Excerpts at tab 7 (Affidavit of Gwen Chandler).

15. Sears alleges that Thurman's own testimony leaves no doubt that he was informed on May 18 that he would no longer be working at Sears:

Q: On May 18th, you no longer had any job duties at Sears; correct?
A: Yeah.
\* \* \* \* \* \*
Q: Who was it that told you that as of May 18, 1987 you were not employed or you didn't have a job at Sears?
A: Susan Blanchard.
Appellee's Record Excerpts at tab 11 (Deposition of Willie L. Thurman).

16. On May 19, Thurman filed a claim for unemployment benefits with the Texas Employment Commission, representing that:
"[I] WAS HURT & THEY SAID I WAS GOING TO THE DR [TOO] MUCH THEY WANTED ME OFF PAYROLL."
Appellant's Record Excerpts at tab 19 (Notice to Employer of Claim for Unemployment Insurance). Thurman, however, argues this statement is inconclusive for two reasons: (i) being off payroll is not synonymous with a "discharge" and (ii) a leave of absence is consistent with "being off the payroll."

17. The Texas Employment Commission found that Thurman was discharged as of May 18. Thurman, however, urges this court to disregard the TEC's records and findings, arguing that the documents and the findings therein establish only an inference that Thurman believed he was discharged on May 18.

18. Sears argues that Thurman knew that he had been terminated from Sears as of June 5 at the very latest. On that date, Thurman voluntarily executed a release and waiver of all claims related to the termination of his employment, which release specifically mentions "my termination from Sears." Appellant's Record Excerpts at tab 16 (Unit Closing General Release and Waiver I).

insurance benefits received by Thurman; (ix) the fact that Sears stopped paying social security tax and withholding income tax on Thurman's behalf as of May 18, 1987;[19] (x) the realities of the reorganization;[20] and (xi) the fact that Thurman was administratively listed as being on a leave of absence only so that he could continue receiving certain benefits such as health and life insurance benefits.[21]

## 2

Thurman forcefully argues that because a leave of absence, standing alone, does not sever the employment relationship, it will not start the statute of limitations running on a claim of discriminatory discharge, and therefore, his leave of absence commencing on May 18, 1987 should not be equated to a termination of his employment. We agree. Texas law does not regard a leave of absence as a complete separation from employment. *See Che-*

nault v. Otis Eng'g Corp., 423 S.W.2d 377, 383 (Tex.Civ.App.—Corpus Christi 1967, *writ ref'd n.r.e.*) (citations omitted). Rather, under Texas law, a leave of absence "connotes a continuity of the employment status, during which time performance of the duties of his work by the employee and remuneration by employer and other fringe benefits may be suspended." *Id.* Therefore, we do not interpret Thurman's "leave of absence,"[22] *by itself,* to be a discharge from his employment. Nonetheless, having analyzed the acts and words of Thurman and the Sears' representatives, we conclude that the summary judgment evidence proffered by Sears—the testimony of two Sears' representatives, Thurman's deposition testimony, and the representations Thurman made to the Texas Employment Commission—discloses that Thurman knew on May 18, 1987 that he had been discharged.[23] The latest that Thurman re-

---

**19.** Thurman challenges the relevance of the fact that as of May 18, Sears ceased paying social security taxes and withholding federal income tax on his behalf. Thurman argues that the fact that Sears stopped paying social security taxes and withholding income tax is as consistent with a leave of absence as with a discharge. Thurman reasons that if he stopped coming to work because he was on leave and therefore not being paid, his employer would not be required to deduct payroll taxes.

**20.** The summary judgment evidence establishes that Thurman was laid off with more than 180 other Sears employees, for non-medical reasons, in connection with a massive reorganization of the DMDC. *See* Appellee's Record Excerpts at tab 10 (Supplemental Affidavit of Gwen Chandler).

**21.** According to Sears, Thurman was administratively listed as being on a "leave of absence" for the purpose of retaining his eligibility for health and life insurance benefits. As part of the reorganization of the DMDC unit, Sears developed a severance allowance plan. *See* Appellee's Record Excerpts at tab 10 (Supplemental Affidavit of Gwen Chandler). Pursuant to this plan, employees were afforded health and life insurance for one year following the date of their termination. Also, these employees were paid a cash lump-sum in accordance with their years of service and their accrued vacation time. In order to keep these employees eligible for health and life insurance, Sears was required to administratively list the terminated employees as being on a leave of absence.

**22.** We characterize Thurman's employment status as a leave of absence here insofar as we interpret the language of certain Sears' documents.

**23.** We examine, however, whether the statements in Thurman's Second Affidavit are sufficient to create a fact issue as to Thurman's knowledge of his termination. Thurman submitted two affidavits—one before his deposition (Thurman's First Affidavit) and one after his deposition (Thurman's Second Affidavit). In his Second Affidavit, Thurman states facts which directly contradict testimony he gave at his deposition. *See* Record Excerpts at tab 7 (Thurman's Second Affidavit). Sears proffers *Albertson v. T.J. Stevenson & Co.,* 749 F.2d 223 (5th Cir.1984), in support of the proposition that a nonmovant cannot defeat a summary judgment motion by submitting an affidavit which contradicts, without explanation, the nonmovant's previous testimony in an attempt to manufacture a disputed material fact issue. *See id.* at 228 (citations omitted) (holding that "nonmovant cannot defeat a motion for summary judgment by submitting an affidavit which directly contradicts, without explanation, his previous testimony"); *see also Bank Leumi Le-Israel, B.M. v. Lee,* 928 F.2d 232, 236–37 (7th Cir.1991) (nonmovant cannot create a genuine issue of material fact by contradicting his own earlier statements unless he offers a plausible explanation for the incongruity). The plaintiff in *Albertson* filed an affidavit which directly contradicted his earlier testimony, and we affirmed the district court's grant of summary judgment. Thurman is now attempting to do the same: in

ceived unequivocal notice of his discharge was June 5—the date on which Thurman executed the release and waiver of his claims relative to his termination by Sears. Apart from the testimony set forth in Thurman's Second Affidavit, the only other summary judgment evidence suggesting that Thurman did not know that he was terminated as of May 18 was that Sears administratively listed Thurman as being on a leave of absence.[24] We find *Bonham* persuasive on this point. *See Bonham v. Dresser Indus.*, 569 F.2d 187, 191–192 (3d Cir.1977), *cert. denied*, 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1978). (disfavoring rule that penalizes employer for giving employee severance pay or other extended benefits after the employment relationship has terminated); *see also Naton v. Bank of Cal.*, 649 F.2d 691, 695 (9th Cir.1981) (citing *Bonham* with approval). We conclude the summary judgment evidence discloses that Thurman stopped working for Sears on May 18, 1987 and that, as of that time, Thurman had unequivocal notice that Sears terminated him.

### 3

Thurman contends, in the alternative, that the statute of limitations should be equitably tolled until the date on which Sears informed Thurman that he was discharged,[25] reasoning that he was entitled to

rely on Sears' representations that he was on leave of absence. Sears argues that Thurman's equitable estoppel argument fails because that argument falsely assumes that Thurman was placed on a "medical" leave of absence. Instead, Sears contends, Thurman was, as he was informed, listed administratively on a leave of absence so that he could continue to receive benefits. Having determined that Thurman had unequivocal notice that he was terminated by Sears on May 18, we also find it unnecessary to address this issue.

### 4

Finally, Thurman argues that Sears' failure to reinstate him constitutes "discrimination in any other manner" and urges this court to find Sears' failure to reinstate him constitutes an independent violation of article 8307c.[26] In order to pursue an action under article 8307c, however, there must be a present employer-employee relationship. *See Stoker v. Furr's*, 813 S.W.2d 719, 724 (Tex.App.—El Paso 1991, writ requested) ("We hold that neither a wrongful discharge suit nor an employment discrimination suit can be brought under Article 8307c in the absence of an existing employer/employee relationship."); *see also Smith v. Coffee's Shop for Boys and Men*, 536 S.W.2d 83, 85 (Tex.Civ.App.—Amarillo

---

submitting his Second Affidavit, Thurman is attempting to create a fact issue as to when he was notified that he had been discharged. The testimony in Thurman's Second Affidavit is as follows: "I was not told by Sears or any of Sears' employees that I had been terminated prior to Sears' refusal to reinstate me." Appellant's Record Excerpts at tab 7 (Thurman's Second Affidavit). Compare that affidavit testimony with Thurman's deposition testimony that he was expressly told by Susan Blanchard that he had been discharged:

Q: On May 18th, you no longer had any job duties at Sears; correct?
A: Yeah.
Q: Who was it that told you that as of May 18, 1987, you were not employed or you didn't have a job at Sears?
A: Susan Blanchard.
Appellee's Record Excerpts at tab 11 (Deposition of Willie L. Thurman). The only explanation Thurman offers for the contradictory statements contained in his Second Affidavit is that Sears' counsel outwitted him and made him

utter words he did not intend—which words should not be construed against him as a conclusive admission. We find this explanation insufficient to create genuine issues of material fact required to defeat summary judgment.

**24.** *See supra* note 22 and accompanying text.

**25.** The district court rejected this argument because it found that Thurman was expressly told that he had been discharged on May 18.

**26.** More specifically, Thurman contends that Sears' refusal to reinstate Thurman was discrimination "in any other manner," occurring within the limitations period and, therefore, Thurman's claim should not be barred by the statute of limitations. Article 8307c provides, in part, that "[n]o person may discharge or *in any other manner* discriminate against an employee because the employee has in good faith filed a claim ... under the Workmen's Compensation Act." Tex.Rev.Civ.Stat.Ann. art. 8307c, § 1 (West Supp.1991) (emphasis added).

1977, no writ) ("Thus, clearly, the acts statutorily condemned are those occurring during the employment, and not afterwards."). Because there did not exist an employment relationship between Sears and Thurman in December 1987, Sears' failure to recall Thurman in December 1987 is not actionable under article 8307c.

## IV ´

Accordingly, we AFFIRM.