IN THE SUPREME COURT OF TEXAS
 
════════════
No. 
09-0558
════════════
 
 
Marsh USA 
Inc. and Marsh & McLennan Companies, Inc.,
Petitioners
 
v.
 
Rex Cook, 
Respondent
 
════════════════════════════════════════════════════
On Petition for Review from 
the
Court of Appeals for the Fifth 
District of Texas
════════════════════════════════════════════════════
 
 
Argued September 16, 2010
 
 
            
Justice Wainwright 
delivered the opinion of the Court, in which Justice Hecht, Justice Medina, Justice Johnson, 
and Justice Guzman 
joined.
 
            
Justice Willett delivered 
an opinion concurring in the judgment.
 
            
Justice Green delivered a 
dissenting opinion, in which Chief 
Justice Jefferson and Justice 
Lehrmann joined.
 
            
In this case, we decide whether a covenant not to compete signed by a 
valued employee in consideration for stock options, designed to give the 
employee a greater stake in the company’s performance, is unenforceable as a 
matter of law because the stock options did not give rise to an interest in 
restraining competition. We hold that, under the terms of the Covenants Not to 
Compete Act (Act), the consideration for the noncompete agreement (stock options) is reasonably related 
to the company’s interest in protecting its goodwill, a business interest the 
Act recognizes as worthy of protection. The noncompete 
is thus not unenforceable on that basis. We reverse the court of appeals’ 
judgment and remand to the trial court for further proceedings.
I. 
BACKGROUND
            
Rex Cook had been employed by Marsh USA Inc. (Marsh) since 1983 and rose 
to become a managing director. Marsh & McLennan Companies, Inc. (MMC) is the 
parent company for various risk management and insurance businesses, including 
Marsh. On March 21, 1996, MMC granted Cook the option to purchase 500 shares of 
MMC common stock pursuant to its 1992 Incentive and Stock Award Plan (Plan). The 
Plan was developed to provide “valuable,” “select” employees with the 
opportunity to become part owners of the company with the incentive to 
contribute to and benefit from the long-term growth and profitability of MMC. 
Under the Plan, stock option awards would vest in twenty-five percent increments 
each year, becoming fully vested and exercisable after a period of four years. 
To exercise a stock option under the Plan’s terms, employees must provide MMC 
with a Notice of Exercise of Option Letter, a signed Non-Solicitation Agreement 
(Agreement), and payment for the stock at the discounted strike price. The term 
of the option was ten years. Cook’s option was set to expire on March 20, 
2006.
            
In February 2005, Cook signed the Agreement and a notice form stating 
that he wanted to exercise the stock options to acquire 3000 shares[1] of MMC common stock at the strike price. 
The Agreement Cook signed provided that if he left the company within three 
years after exercising the options, then for a period of two years after 
termination Cook would not:
 
                        
(a) solicit or accept business of the type offered by [MMC] during 
[Cook’s] term of employment with [MMC], or perform or supervise the performance 
of any services related to such type of business, from or for (I) clients or 
prospects or [MMC] or its affiliates who [Cook] solicited or serviced directly . 
. . or where [Cook] supervised, directly, indirectly, in whole or in part, the 
solicitation or servicing activities related to such clients or prospects; or 
(II) any former client of [MMC] or its affiliates who was such within two (2) 
years prior to [Cook’s] termination of employment and who was solicited or 
serviced directly by [Cook] or where [Cook] supervised directly or indirectly, 
in whole or in part, the solicitation or servicing activities related [to] such 
former clients; or
 
                        
(b) solicit any employee of [MMC] who reported 
to [Cook] directly or indirectly to terminate his employment with [MMC] for the 
purpose of competing with [MMC].
 
 
In addition, the Agreement provided 
that Cook would keep MMC’s confidential information and trade secrets 
confidential during and after his employment with Marsh.
            
Less than three years after signing the Agreement and exercising the 
stock options, Cook resigned from Marsh and immediately began employment in 
Dallas with Dallas Series of Lockton Companies, LLC 
(Lockton), a direct competitor of MMC. Within a week 
after Cook’s resignation, MMC sent Cook a letter including allegations that he 
violated the Agreement through his efforts to solicit Marsh clients and 
employees.
            
MMC filed suit against Cook and Lockton for 
breach of contract and breach of fiduciary duty, claiming, among other things, 
that Cook had solicited and accepted business from clients and prospects of 
Marsh who were serviced directly by Cook or where Cook supervised, directly or 
indirectly, the solicitation activities related to the client or potential 
client. Cook filed a motion for partial summary judgment on the ground that the 
Agreement constituted an unenforceable contract because it was not ancillary to 
or part of an otherwise enforceable agreement under Light v. Centel Cellular Co. of Texas, 883 S.W.2d 643, 647 (Tex. 
1994). The trial court granted Cook’s motion for partial summary judgment on the 
breach of contract claim, concluding in the order that the Agreement was 
unenforceable as a matter of law. Marsh non-suited its 
other claims and appealed the partial summary judgment. Relying on Light, 
the court of appeals affirmed the trial court’s judgment, holding that the 
transfer of stock did not give rise to Marsh’s interest in restraining Cook from 
competing. Marsh USA Inc. v. Cook, 287 S.W.3d 378, 382 (Tex. App.—Dallas 
2009, pet. granted). Marsh appealed.
            
We granted Marsh’s petition for review to address the enforceability of 
the covenant at issue. We review de novo issues of statutory construction and 
application of the law to undisputed facts in summary judgments. McIntyre v. Ramirez, 109 S.W.3d 741, 745 (Tex. 2003); 
Provident Life & Accident Ins. Co. v. Knott, 128 S.W.3d 211, 215 
(Tex. 2003).
II. 
ENFORCEABILITY OF THE COVENANT NOT TO COMPETE
            
The Agreement generally prohibits Cook from soliciting or accepting 
business of the type offered by MMC and in which Cook was involved from clients, 
prospective clients, and former clients of MMC or its affiliates who were such 
within the two years prior to Cook’s termination. It also provides that Cook may 
not solicit any MMC employee who reported directly or indirectly to Cook and 
includes a nondisclosure requirement to keep confidential MMC’s trade secrets 
during and after his employment with Marsh.
            
Covenants that place limits on former employees’ professional mobility or 
restrict their solicitation of the former employers’ customers and employees are 
restraints on trade and are governed by the Act. See DeSantis v. Wackenhut Corp., 793 S.W.2d 670, 681–82 
(Tex. 1990); Miller Paper Co. v. Roberts Paper Co., 901 S.W.2d 
593, 599–600 (Tex. App.—Amarillo 1995, no writ) (stating that non-solicitation 
covenants prevent the employee from soliciting customers of the employer and 
effectively restrict competition); see also Guy Carpenter & Co. v. Provenzale, 334 F.3d 459, 464–65 (5th Cir. 2003) 
(applying Texas law and stating that non-solicitation covenants restrain trade 
and competition and are governed by the Act); Rimkus Consulting Grp., 
Inc. v. Cammarata, 255 F.R.D. 417, 438–39 (S.D. 
Tex. 2008) (holding that a “nonsolicitation covenant 
is also a restraint on trade and competition and must meet the criteria of 
section 15.50 of the Texas Business and Commerce Code to be enforceable” 
(citations omitted)). Agreements not to disclose trade secrets and confidential 
information are not expressly governed by the Act. See, e.g., 
CRC-Evans Pipeline Int’l, Inc. v. Myers, 927 S.W.2d 259, 265 (Tex. 
App.—Houston [1st Dist.] 1996, no writ); Zep 
Mfg. Co. v. Harthcock, 824 S.W.2d 654, 663 (Tex. 
App.—Dallas 1992, no writ); see also Olander v. 
Compass Bank, 172 F. Supp. 2d 846, 852 (S.D. Tex. 2001). The parties concur 
that the Agreement in this case is governed by the Act. To the extent this 
Agreement extends beyond the non-disclosure of Marsh’s trade secrets and 
confidential information, we address its enforceability under the 
Act.
A. Rationale 
for Enforcement of Covenants Not to Compete
            
The Texas Constitution protects the freedom to contract. See Tex. Const. art. I, § 16; Fairfield 
Ins. Co. v. Stephens Martin Paving, LP, 246 S.W.3d 653, 663–64 (Tex. 2008); 
see also In re Prudential Ins. Co. of Am., 148 S.W.3d 124, 128–29 (Tex. 
2004). Entering a noncompete is a matter of consent; 
it is a voluntary act for both parties. However, the Legislature may impose 
reasonable restrictions on the freedom to contract consistent with public 
policy. See Fairfield Ins. Co., 246 S.W.3d at 
664–65. It has done so with the Texas Free Enterprise and Antitrust Act 
of 1983, Tex. Bus. & Com. Code ch. 15, which includes the Act, Tex. 
Bus. & Com. Code §§ 15.50–.52.
            
The purpose of Chapter 15 is “to maintain and promote economic 
competition in trade and commerce” occurring in Texas. Tex. Bus. & Com. Code 
§ 15.04. 
Unreasonable limitations on employees’ abilities to change employers or solicit 
clients or former co-employees, i.e., compete against their former 
employers, could hinder legitimate competition between businesses and the 
mobility of skilled employees. See id.; Potomac Fire Ins. Co. v. 
State, 18 S.W.2d 929, 934 (Tex. Civ. App.—Austin 1929, writ ref’d) (holding that a contract between two insurance 
companies to limit compensation and not hire their competitors’ companies was 
unenforceable as it was intended to “crush and destroy competition”). On the 
other hand, valid noncompetes constitute reasonable 
restraints on commerce agreed to by the parties and may increase efficiency in 
industry by encouraging employers to entrust confidential information and 
important client relationships to key employees. See Hill v. Mobile Auto 
Trim, Inc., 725 S.W.2d 168, 176–77 (Tex. 1987) (Gonzalez, J., dissenting) 
(citing Restatement (Second) of 
Contracts § 188 cmt. c (1981)), superseded 
by statute, Tex. Bus. & Com. Code § 15.50(a). Legitimate covenants 
not to compete also incentivize employers to develop goodwill by making them 
less reluctant to invest significant resources in developing goodwill that an 
employee could otherwise immediately take and use against them in business. 
See generally Richard A. Posner, 
Economic Analysis of Law § 3.1 (2d ed. 1977), cited in Hill, 725 
S.W.2d at 176 (Gonzalez, J., dissenting); Patterson v. Crabb, 51 S.W. 
870, 871 (Tex. Civ. App. 1899, writ dism’d) 
(recognizing under the common law the inequity of allowing a former employee 
to compete against an employer by using that employer’s goodwill against him 
when the employee had agreed not to compete with the employer). Stated 
differently, valid covenants not to compete ensure that the costs incurred to 
develop human capital are protected against competitors who, having not made 
such expenditures, might appropriate the employer’s investment. Greg T. Lembrick, Garden Leave: A Possible Solution to the 
Uncertain Enforceability of Restrictive Employment Covenants, 102 Colum. L. Rev. 2291, 2296 (2002) 
(noting the employers’ high cost of developing human capital, including 
extensive training, revelation of confidential information and exposure to key 
customers); see Harlan M. Blake, Employee Agreements Not to 
Compete, 73 Harv. L. Rev. 
625, 652 (1960), cited in Alex Sheshunoff Mgmt. 
Servs., L.P. v. Johnson, 209 S.W.3d 644, 660 (Tex. 
2006) (Jefferson, C.J., concurring).
            
The House Business and Commerce Committee echoed this purpose of the 
Act:
 
It is generally held that these covenants, in 
appropriate circumstances, encourage greater investment in the development of 
trade secrets and goodwill employee training, providing contracting parties with 
a means to effectively and efficiently allocate various risks, allow the freer 
transfer of property interests, and in certain circumstances, provide the only 
effective remedy for the protection of trade secrets and good will 
[sic].
 
 
House Comm. on Bus. & Commerce, Bill Analysis, Tex. S.B. 946, 71st Leg., R.S. 
(1989).[2]
            
The Legislature, presumably recognizing these interests could conflict, 
crafted the Act to prohibit naked restrictions on employee mobility that impede 
competition while allowing employers and employees to agree to reasonable 
restrictions on mobility that are ancillary to or part of a valid contract 
having a primary purpose that is unrelated to restraining competition 
between the parties.[3] See Tex. Bus. & Com. Code §§ 
15.05(a), .50(a). By 
doing so, the Legislature facilitates its stated objective of promoting economic 
competition in commerce. Id. § 15.04.
            
In section 15.05(a) of the Business and Commerce Code, the Legislature 
included a policy limitation on the freedom between employers and employees to 
contract: “Every contract, combination, or conspiracy in restraint of trade or 
commerce is unlawful.” Id. Our cases recognize that such naked restraints 
on trade are unlawful. See, e.g., Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding, 289 S.W.3d 844, 849 
(Tex. 2009); Justin Belt Co. v. Yost, 502 S.W.2d 681, 685 (Tex. 1973) 
(citations omitted); Weatherford Oil Tool Co. v. Campbell, 340 S.W.2d 
950, 952 (Tex. 1960). Where the object of both parties in making such a contract 
“is merely to restrain competition, and enhance or maintain prices,” there is no 
primary and lawful purpose of the relationship “to justify or excuse the 
restraint.” United States v. Addyston Pipe & 
Steel Co., 85 F. 271, 282–83 (6th Cir. 1898), aff’d 175 U.S. 211 (1899), cited in Bus. Elecs. 
Corp. v. Sharp Elecs. 
Corp., 485 U.S. 717, 738 (1988) (Stevens, J., dissenting); see also 
Potomac Fire Ins. Co., 18 S.W.2d at 934. This is the basis for the 
requirement that the covenant be ancillary to a valid contract or transaction 
having a primary purpose that is unrelated to restraining competition between 
the parties.
            
The Legislature also recognized that, even though it may restrain trade 
to a limited degree, a valid covenant not to compete facilitates economic 
competition and is not a naked restraint on trade. Tex. Bus. & Com. Code § 
15.04. A noncompetition agreement is enforceable if it is 
reasonable in time, scope and geography and, as a threshold matter, “if it is 
ancillary to or part of an otherwise enforceable agreement at the time the 
agreement is made.” Tex. Bus. & Com. Code § 15.50(a).
            
We engage in a two-step inquiry to determine this threshold requirement 
for enforceability under the Act. First, we determine whether there is an 
“otherwise enforceable agreement” between the parties, then we determine whether 
the covenant is “ancillary to or part of” that agreement. Mann 
Frankfort, 289 S.W.3d at 849; Light, 
883 S.W.2d at 644.
B. History of 
the Threshold Standards to Enforceability
            
At one time the common law generally prohibited all restraints on trade, 
Addyston Pipe & Steel Co., 85 F. at 
279–80,[4] and Texas jurisprudence once held 
covenants not to compete to be unenforceable because they were in restraint of 
trade and contrary to public policy. Chenault v. Otis Eng’g Corp., 423 S.W.2d 377, 381–82 (Tex. Civ. 
App.—Corpus Christi 1967, writ ref’d n.r.e.) (citations omitted). 
But “people and the courts” came to recognize that “it was in the interest of 
trade that certain covenants in restraint of trade should be enforced.” Addyston Pipe & Steel Co., 85 F. at 280; 
see also Cline v. Frink Dairy Co., 274 U.S. 
445, 461 (1927); Justin Belt Co., 502 S.W.2d at 685. And the rule became 
well-established in Texas that reasonable noncompete 
clauses in contracts pertaining to employment are not considered to be contrary 
to public policy as constituting an invalid restraint of trade. DeSantis, 793 S.W.2d at 
681; Chenault, 423 S.W.2d at 381. Texas 
courts have enforced reasonable covenants not to compete dating back at least to 
1899. Patterson, 51 S.W. at 871–72. “The courts of this State have in 
numerous cases enforced negative restrictive covenants not to compete when 
ancillary to employment involving trade or professions although such covenants 
may be in limited restraint of trade, provided they are reasonably limited as to 
duration and area.” Chenault, 423 S.W.2d at 
381–82 (citations and quotations omitted); see also McAnally v. Person, 57 S.W.2d 945, 949 (Tex. 
Civ. App.—Galveston 1933, writ ref’d); Koenig v. 
Galveston Ice & Cold Storage Co., 18 S.W.2d 1099, 1100 (Tex. Civ. 
App.—Galveston 1929, no writ); Michael D. Paul & Ian C. Crawford, 
Refocusing Light: Alex Sheshunoff 
Management Services, L.P. v. Johnson Moves Back to the Basics of Covenants 
Not to Compete, 38 St. Mary’s L.J. 
727, 731 (2007). In 1973, we articulated for the first time the common 
law requirement recognized by courts of appeals in Texas and other states that a 
covenant not to compete must be “ancillary” to another contract, transaction or 
relationship. Justin Belt Co., 502 S.W.2d at 683–84; see also Potomac 
Fire Ins. Co., 18 S.W.2d at 934; Chenault, 
423 S.W.2d at 382; Novelty Bias Binding Co. v. Shevrin, 175 N.E.2d 374, 376 (Mass. 1961). See generally Bond Elec. Corp. v. Keller, 166 A. 341, 342 
(N.J. Ch. 1933).
            
In the short-lived opinion of Hill v. Mobile Auto Trim in 1987, 
the Court adopted the Utah common law precept that covenants not to compete are 
unenforceable if they prohibit employees from obtaining jobs that share a 
“common calling” with their current employment. 725 S.W.2d at 
172. This essentially barred noncompete 
agreements that protected even reasonable business interests of an employer. 
See Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson, 209 S.W.3d 644, 652–53 (Tex. 
2006) (citing Sen. Research Ctr., Bill Analysis, Tex. S.B. 946, 71st Leg., R.S. 
(1989)).
            
In DeSantis v. Wackenhut Corp., a 
covenant not to compete was held to be unreasonable and unenforceable because 
the employer had not shown that it needed the protection a noncompete would afford. 793 S.W.2d at 
684. In that case, the interest allegedly being protected was 
confidential information, but the employer failed to prove that the information 
could create a competitive advantage and was not obtainable by persons outside 
of its employ. Id. There was no dispute in DeSantis that the agreement was ancillary to 
an otherwise valid relationship, but in defining the common law principles that 
govern in Texas, we stated that, for noncompete 
agreements to be valid and enforceable, the common law required that they be 
“part of and subsidiary to an otherwise valid transaction or relationship which 
gives rise to an interest worthy of protection.” Id. at 682 (citing Restatement (Second) of Contracts § 187 
cmt. b (1981)).
            
While DeSantis was pending before 
this Court, the Legislature passed the Act, adding to Chapter 15, Monopolies, 
Trusts and Conspiracies in Restraint of Trade, of the Texas Business and 
Commerce Code. Id. at 684 (citing Act of May 23, 1989, 
71st Leg., R.S., ch. 1193, § 1, 1989 Tex. Gen. Laws 
4852). Section 15.50(a) of the new Act provided:
 
Notwithstanding section 15.05 of this code, and subject 
to any applicable provision of Subsection (b), a covenant not to compete is 
enforceable if it is ancillary to or part of an otherwise enforceable agreement 
at the time the agreement is made to the extent that it contains limitations as 
to time, geographical area, and scope of activity to be restrained that are 
reasonable and do not impose a greater restraint than is necessary to protect 
the goodwill or other business interest of the promisee.
 
 
Tex. Bus. 
& Com. Code § 15.50(a). The Act was intended to reverse the 
Court’s apparent antipathy to covenants not to compete and specifically to 
remove the obstacle to their use presented by the narrow “common calling” test 
instituted by Hill, and to “restore over 30 years of common law developed 
by Texas Courts and remove an impairment to economic development in the state.” 
Sheshunoff, 209 S.W.3d at 653 (quoting House 
Research Org., Bill Analysis, Tex. S.B. 946, 71st Leg., R.S. (1989)). Quite 
simply, “[t]he purpose of the act was to return Texas’ law generally to the 
common law as it existed prior to Hill v. Mobile Auto Trim.” Peat Marwick Main & Co. v. Haass, 818 S.W.2d 381, 388 (Tex. 1991) (citation 
omitted).[5] Under the common law prior to 
Hill, the “rule [was] well established in Texas that non-competition 
clauses in contracts pertaining to employment [were] not normally considered to 
be contrary to public policy as constituting an invalid restraint of trade.” 
Chenault, 423 S.W.2d at 
381.
            
In the two-step threshold inquiry to determine if a covenant not to 
compete is enforceable under the Act, we determine whether there is an 
“otherwise enforceable agreement” between the parties, and, if so, we determine 
whether the covenant is “ancillary to or part of” that agreement. Mann Frankfort, 289 S.W.3d at 849 (quoting 
Light, 883 S.W.2d at 644). The “otherwise enforceable agreement” 
requirement is satisfied when the covenant is “part of an agreement that 
contained mutual non-illusory promises.” Sheshunoff, 209 S.W.3d at 648–49 (quoting 
Light, 883 S.W.2d at 646); see also DeSantis, 793 S.W.2d at 681 (noting that “the agreement 
not to compete must be ancillary to an otherwise valid transaction or 
relationship,” including purchase and sale of a business and employment 
relationships (citations omitted)). No one contests that an “otherwise 
enforceable agreement” exists in this case—Cook entered into an agreement that 
he would not solicit Marsh’s clients, recruit Marsh’s employees, or disclose 
confidential information in exchange for the stock option price. There is offer, 
acceptance, and consideration for the mutual promises, and the nonsolicitation and nondisclosure agreements are “otherwise” 
enforceable agreements. See Sheshunoff, 209 
S.W.3d at 648; see also Mann Frankfort, 289 S.W.3d at 850 (noting that an 
implied promise may support an “otherwise enforceable agreement”). The question 
in this case is whether Cook’s covenants are “ancillary to or part of” the 
otherwise enforceable agreement.
            
In Light v. Centel Cellular Co. of 
Texas, we first considered a two-pronged approach to determine whether the 
covenant is “ancillary to or part of” the otherwise enforceable agreement, 
requiring that:
 
(1) the consideration given by 
the employer in the otherwise enforceable agreement must give rise to the 
employer’s interest in restraining the employee from competing; and (2) the 
covenant must be designed to enforce the employee’s consideration or return 
promise in the otherwise enforceable agreement.
 
 
883 S.W.2d at 
647. Today we 
address the first prong of Light’s explication of the “ancillary to or 
part of” requirement, i.e., whether the Act requires that consideration 
for covenants not to compete must “give rise” to the employer’s interest in 
restraining the employee from competing. Id.
C. The “Give 
Rise” 
Requirement
            
It is important to note that the Act itself does not include a “give 
rise” requirement, nor does it define “ancillary.” In Texas, the common law 
“give rise” requirement was first stated in DeSantis in 1987. 793 
S.W.2d at 682. We held that the common law prior to the enactment of the 
Act required that noncompete agreements be “part of 
and subsidiary to an otherwise valid transaction or relationship which 
gives rise to an interest worthy of protection.” Id. (citing Restatement (Second) of Contracts § 187 
cmt. b (1981)) (emphasis added). Light 
diverged from the common law definition of “give rise” as articulated in 
DeSantis. See id. Rather than 
requiring that the otherwise enforceable agreement give rise to “an interest 
worthy of protection,” Light imposed a stricter requirement: that the 
consideration give rise to “the employer’s interest 
in restraining the employee from competing.” Light, 883 S.W.2d at 
647 (emphasis added). Light’s “give rise” condition on the 
enforceability of noncompetes was more restrictive 
than the common law rule the Legislature intended to resurrect. Although we have 
recognized on multiple occasions that goodwill, along with trade secrets and 
other confidential or proprietary information, is a protectable business 
interest, Light’s “give rise” language narrowed the interests the 
Act would protect, excluding much of goodwill as a protectable business 
interest. See id.; DeSantis, 793 S.W.2d 
at 682; see also Sheshunoff, 209 S.W.3d at 649; 
Olander, 172 F. Supp. 2d at 855 & n.12 
(noting that Light recognized covenants to protect confidential 
information as otherwise enforceable agreements but suggesting that the stock 
options at issue could give rise to protection of goodwill); cf. McAnelly v. Brady Med. Clinic, P.A., No. 03-04-00095-CV, 
2004 WL 2556634, at *2–3 (Tex. App.—Austin Nov. 12, 2004, no pet.) (stating that noncompetes are 
“disfavored contract[s]” and holding that the sale of a medical practice was 
merely a sale of medical supplies and thus not an interest worthy of protecting 
through a covenant not to compete). Commentators noticed that in Texas caselaw, “[o]ther than a promise 
not to disclose trade secrets and confidential information, little else seems to 
satisfy this prong of the statute.” Paul & Crawford, Refocusing 
Light:, 38 St. Mary’s L.J. at 752.[6] This, despite the apparent objective of 
the Legislature in overruling Hill to “restore over 30 years of common 
law developed by Texas Courts and remove an impairment 
to economic development in the state.” Sheshunoff, 209 S.W.3d at 653 (quoting House Research 
Org., Bill Analysis, Tex. S.B. 
946, 71st Leg., R.S. (1989)); see also Peat Marwick, 818 S.W.2d at 
388.
            
In the two instances after Light in which this Court interpreted 
the Act, Light’s “give rise” standard was not at issue. However, we 
retreated from some of Light’s other precepts. Under Light, a 
unilateral contract (formed when one of the promises was illusory) could not 
support a covenant not to compete because it was not “‘an otherwise enforceable 
agreement at the time the agreement [was] made.’” Light, 883 S.W.2d at 645 n.6 (quoting Tex. Bus. & Com. Code § 
15.50). In Alex Sheshunoff Management Services, L.P. v. Johnson, we 
revisited the meaning of the phrase “at the time the agreement is made,” and 
determined that Light was overly restrictive. 209 
S.W.3d at 651. We held that “at the time the agreement is made” modified 
“ancillary to or part of” rather than the “otherwise enforceable agreement,” and 
thus a unilateral contract that was unenforceable when made could support a 
covenant not to compete as long as the covenant was “ancillary to or part of” 
the agreement at the time the agreement was made. Id.; see also Vanegas v. Am. Energy Servs., 302 S.W.3d 299, 302–03 (Tex. 
2009) (applying Sheshunoff’s unilateral 
contract rationale). The covenant not to compete in Sheshunoff was enforceable despite being 
supported by an executory unilateral contract. Sheshunoff, 209 S.W.3d at 
651. In addition, we re-emphasized that the focus in applying 
section 15.50 should be on the reasonableness of the covenant. Id. at 655–56.
            
In Mann 
Frankfort Stein & Lipp Advisors, Inc. v. 
Fielding, we took another step away from Light’s restrictiveness 
and toward greater enforceability of noncompete 
agreements. 289 S.W.3d 844 (Tex. 2009). The employer 
did not expressly promise to provide the employee with confidential information, 
but the employee’s position mandated such information be provided. Id. at 850. The employee promised not to disclose 
confidential information obtained. Id. We held that “[w]hen the nature of 
the work the employee is hired to perform requires confidential information to 
be provided . . . the employer 
impliedly promises confidential information will be provided.” 
Id.
            
Turning to 
the “give rise” question, the Legislature did not include a requirement in the 
Act that the consideration for the noncompete 
must give rise to the interest in restraining competition with the 
employer. Instead, the Legislature required a nexus—that the noncompete be “ancillary to” or “part of” the otherwise 
enforceable agreement between the parties. Tex. Bus. & Com. Code 
§15.50(a). There is 
nothing in the statute indicating that “ancillary” or “part” should mean 
anything other than their common definitions. “[A]ncillary means ‘supplementary’ and part means ‘one of 
several . . . units of which something is composed.’” Sheshunoff, 209 S.W.3d at 651, 665 (Wainwright, J., 
concurring) (quoting Webster’s Ninth New Collegiate Dictionary 84, 
857 (9th ed. 1990)).
            
In this case, 
the trial court and court of appeals held that the covenant not to compete was 
not ancillary to an otherwise enforceable agreement under the Light test. 
287 S.W.3d at 381–82. The court of appeals concluded 
that “the fact that a company’s business goodwill benefits when an employee 
accepts the offered incentive and continues his employment does not mean that 
the incentive gives rise to an employer’s interest in restraining the employee 
from competing.” Id. Under section 15.50 and the Texas common law, it 
does not have to. The statute requires that a covenant not to compete be 
ancillary to an otherwise enforceable agreement. Tex. Bus. & Com. Code § 
15.50(a). The common 
meaning of those words control; the covenant not to compete must be ancillary to 
(supplementary) or part of (one of several units of which something is composed) an otherwise enforceable agreement. See Sheshunoff, 209 S.W.3d at 664–65 (Wainwright, J., 
concurring). This interpretation is confirmed by the pre-existing common law 
requirement that the otherwise enforceable agreement must be reasonably related 
to the interest worthy of protection. DeSantis, 
793 S.W.2d at 682. Furthermore, there is no compelling 
logic in Light’s conclusion that consideration for the otherwise 
enforceable agreement gives rise to the interest in restraining the employee 
from competing. See Sheshunoff, 209 S.W.3d at 
664–65 (Wainwright, J., concurring). Consideration for a noncompete that is reasonably related to an interest worthy 
of protection, such as trade secrets, confidential information or goodwill, 
satisfies the statutory nexus; and there is no textual basis for excluding the 
protection of much of goodwill from the business interests that a noncompete may protect. Light’s requirement is 
contrary to the language of the Act; thwarts the purpose of the Act, which was 
to expand rather than restrict the enforceability of such covenants; and 
contradicts the Act’s intent to return Texas law on the enforceability of noncompete agreements to the common law prior to 
Hill. See Sheshunoff, 209 S.W.3d at 652–63.
            
Requiring that a covenant not to compete be ancillary to an otherwise 
enforceable agreement or relationship ensures that noncompete agreements that are naked restraints of trade 
will not be enforceable under the Act. See Restatement (Second) of Contracts § 187 
cmt. b (1981). The common law requirement 
that there be a nexus between the otherwise valid transaction and the interest 
worthy of protection bolsters the ancillary requirement. DeSantis, 793 S.W.2d at 
681–82. The stated purpose of the Act is to “maintain and promote 
economic competition in trade and commerce,” and it countenances the enforcement 
of reasonable covenants not to compete. Tex. Bus. & Com. Code §§ 
15.04, .50(a). Robust 
competition and reasonable covenants not to compete can co-exist. Adding more 
stringent requirements on top of those in the Act is unnecessary to prevent 
naked restraints on trade and would thwart the Legislature’s attempt to enforce 
reasonable covenants under the Act. See Mann Frankfort, 289 S.W.3d at 
858–59 (Hecht, J., concurring).
D. MMC’s 
Covenant Not to Compete
            
“A person’s right to use his own labor in any lawful employment is . . . 
one of the first and highest of civil rights.” Int’l Printing Pressmen & 
Assistants’ Union of N. Am. v. Smith, 198 S.W.2d 729, 740 (Tex. 1947) 
(citing 2 Cooley’s Law of Torts 
584, 587 (3d ed. 1906)). This value is protected by sections 15.05 and 15.50(a) 
of the Texas Free Enterprise and Antritrust Act of 
1983 and is not offended by enforcing covenants not to compete that comply with 
section 15.50(a). See Tex. Bus. 
& Com. Code §§ 15.05, .50(a); Michael Newman & Shane Crase, The Rule of Reason in Drafting Noncompete Agreements, Fed. Law., 
Mar.–Apr. 2007, at 21 (discussing how noncompete 
agreements can benefit both the employer and employee). See generally B. 
Prater Monning, III, Note, Employee Covenants Not 
to Compete: The Justin Bootstrap Doctrine, 28 Sw. 
L.J. 608, 613 (1974).
            
In this instance, Cook exercised the stock options and became an owner. 
Sally Dillenback, the head of Marsh’s Dallas office, 
explained in her uncontested affidavit:
 
The purpose of the Incentive Plan was to advance the 
interests of MMC and its stockholders by providing a means to attract, retain, 
and motivate employees of MMC and its affiliates, including Marsh, and to 
strengthen the mutuality of interest between employees and MMC’s stockholders. 
The Incentive Plan was designed so that a valuable employee could ultimately 
benefit from an increase in the value of the business and profits, whereas, as 
an employee without stock options, Cook was limited to only those benefits 
provided to any employee of the firm. The Incentive Plan provides select 
employees with an incentive to stay with Marsh long-term; namely, an ownership 
interest in the company. This, in turn, gives employees an interest in ensuring 
that the company performs well and that its stock rises (thereby increasing the 
value of their options). The Incentive Plan also serves to enhance the 
relationships between Marsh and its customers by helping the company retain 
highly-motivated employees with an interest in the long-term success of the 
company, which, in turn enhances the goodwill of Marsh. The covenant not to 
compete provision of the Non-Solicitation Agreement prevents employees from 
using that goodwill, i.e., the relationship between Marsh, the employee, 
and the customer, to attract the customer to a competitor.
 
 
Cook was a managing director of 
Marsh, and as affirmed by Dillenback, he was a 
“valuable employee who had successfully performed at his position at Marsh . . . 
and had been successful with attracting and retaining business for Marsh.” She 
further explained that in the insurance brokerage industry, “long-term, personal 
contact between the employee and customer is especially important due to 
similarity in the product offered by competitors. The advantage acquired through 
the employee’s long-term relationship and contact with customers is part of 
MMC’s goodwill.” For those reasons, he was awarded the stock options. Cook’s 
exercise of the stock options to purchase MMC stock at a discounted price 
provided a reasonable nexus between the noncompete and 
the company’s interest in protecting its goodwill.
            
By awarding Cook stock options, Marsh linked the interests of a key 
employee with the company’s long-term business interests. Stockholders are 
“owners” who, beyond employees, benefit from the growth and development of the 
company. Owners’ interests are furthered by fostering the goodwill between the 
employer and its clients. The stock options are reasonably related to the 
protection of this business goodwill. Thus, this covenant not to compete is 
ancillary to an otherwise enforceable agreement.[7] And, in the Legislature’s apparent 
judgment, reasonable noncompetes encourage greater 
investment in the development of goodwill and employee training. The 
dissent concedes that exercising stock options to become an owner “could 
motivate an employee to create goodwill, thus increasing the value of the 
interest worthy of protection.” ___ S.W.3d ___ n.9 (Green, J., 
dissenting).
            
The hallmark of enforcement is whether or not the covenant is reasonable. 
See Sheshunoff, 209 S.W.3d at 
655 (citing Tex. Bus. & Com. Code § 
15.50(a)). The 
enforceability of the covenant should not be decided on “overly technical 
disputes” of defining whether the covenant is ancillary to an agreement. Sheshunoff, 209 S.W.3d at 
655. “Rather, the statute’s core inquiry is whether the covenant 
‘contains limitations as to time, geographical area, and scope of activity to be 
restrained that are reasonable and do not impose a greater restraint than is 
necessary to protect the goodwill or other business interest of the promisee.’” Id. (quoting Tex. Bus. & Com. Code § 15.50(a)).
            
Marsh sought an agreement not to compete from Cook to protect the 
company’s goodwill— namely, the relationships the company has developed with its 
customers and employees and their identities, due in part to Cook’s performance 
as a valued employee. The Act provides that “goodwill” is a protectable 
interest. Tex. Bus. & Com. Code § 
15.50(a); see also Mann Frankfort, 289 S.W.3d at 848 (quoting 
Tex. Bus. & Com. 
Code § 15.50(a)); Sheshunoff, 209 S.W.3d at 648 (same); Peat 
Marwick, 818 S.W.2d at 386. Texas law has long 
recognized that goodwill, although intangible, is 
property and is an integral part of the business just as its physical assets 
are. Alamo Lumber Co. v. Fahrenthold, 58 S.W.2d 1085, 1088 (Tex. Civ. 
App.—Beaumont 1933, writ ref’d); Taormina v. Culicchia, 355 S.W.2d 569, 573 (Tex. Civ. App.—El Paso 
1962, writ ref’d n.r.e.). Goodwill is defined 
as:
 
the advantage or benefits which is acquired by an 
establishment beyond the mere value of the capital stock, funds or property 
employed therein, in consequence of the general public patronage and 
encouragement which it receives from constant and habitual customers on account 
of its local position, or common celebrity, or reputation for skill, or 
influence, or punctuality, or from other accidental circumstances or 
necessities, or even from ancient partialities or 
prejudices.
 
 
Taormina, 355 S.W.2d at 573; see also 
Black’s Law Dictionary 703 (7th 
ed. 1999) (defining “goodwill” as “[a] business’s reputation, patronage, and 
other intangible assets that are considered when appraising the business . . 
.”). The Act recognizes Marsh’s goodwill as an interest worthy of 
protection.
            
We do not decide whether the Agreement is reasonable as to time, scope of 
activity, and geographical area. If the trial court determines that any 
particular provision is unreasonable or overbroad, the trial court has the 
authority to reform the Agreement and enforce it by injunction with reasonable 
limitations. Tex. Bus. & Com. Code § 15.51(c); 
Campbell, 340 S.W.2d at 952. We hold that if the 
relationship between the otherwise enforceable agreement and the legitimate 
interest being protected is reasonable, the covenant is not void on that 
ground.
III. TIMING 
REQUIREMENT
            
Marsh also contends that the court of appeals imposed a new timing 
requirement, where the employer’s interest in restraining the employee cannot 
exist before the employer’s consideration is given. 287 S.W.3d 
at 382. Such a requirement is inconsistent with our ruling in Sheshunoff. In Sheshunoff, the employer agreed to provide 
confidential information in exchange for the employee’s agreement to keep the 
information confidential and covenant not to compete, however the employee had 
already received confidential information from the employer. 209 S.W.3d at 647. We concluded that the agreement was 
reasonable and enforceable despite the passage of confidential information from 
employer to employee prior to the agreement. Id. at 
647, 657. We did note that the parties disputed whether the nature of the 
confidential information received prior to the agreement differed from the 
confidential information received after the agreement, but focused on the fact 
that confidential information was provided after the agreement, fulfilling the 
employer’s promise. Id. at 647. There is no 
requirement under Texas law that the employee receive 
consideration for the noncompete agreement prior to 
the time the employer’s interest in protecting its goodwill arises.
IV. RESPONSE TO 
DISSENT
            
The dissent argues that our opinion thwarts the legislative intent. ___ 
S.W.3d ___ (Green., J., dissenting). Legislative intent 
is discerned from the words used. As determined from the language of the 
statute, our opinion requires that the covenant not to compete be ancillary to 
or part of an otherwise enforceable agreement. The former judicial requirement 
that the “consideration given by the employer in the otherwise enforceable 
agreement must give rise to the employer’s interest in restraining the employee 
from competing” is not anchored in the text of the Act. See Light, 883 S.W.2d at 647. We attempt to construe the Legislature’s 
words. See Eric Behrens, A Trend Toward Enforceability: Covenants Not 
to Compete in At-Will Employment Relationships Following Sheshunoff and Mann Frankfort, 73 Tex. B.J. 732, 738 (Oct. 2010) (stating 
that the Court’s interpretations of section 15.50(a) “show a trend toward 
enforceability of non-compete clauses that is true to the legislative intent 
behind the Covenants Not to Compete Act and the 1993 amendments”).
            
The Legislature passed the Act to overturn this Court’s opinion Hill 
v. Mobile Trim. Reinforcing this point, the House Research Organization 
indicated that the purpose was to reverse the Court’s antipathy toward such 
covenants. House Research Org., Bill Analysis, Tex. S.B. 946, 71st Leg., R.S. 
(1989). We are somewhat befuddled by the continued antipathy to reliance on 
consensual and reasonable noncompetes as one means “to 
encourage greater investment in the development” of business goodwill. 
Id. The dissent frowns on noncompetes 
reasonably related to goodwill that are not tied specifically to trade secrets, 
confidential information or special training. ___ S.W.3d ___ 
(Green, J., dissenting) (stating that “[t]rade 
secrets, confidential information, and special training” may support a covenant 
not to compete but failing to include goodwill). The comparison is 
presumably to trade secrets and confidential information, which, the dissent’s 
logic suggests, are well-defined and easily proved or disproved, a position with 
a number of detractors. See In re Bass, 113 S.W.3d 735, 740 (Tex. 2003) 
(recognizing that the six factor test for trade secrets in the Restatement 
(Third) of Unfair Competition is “relevant but not dispositive,” and that it is 
appropriate to weigh trade secret factors in the context of surrounding 
circumstances); Restatement (Third) of 
Unfair Competition § 39 cmt. d (1995) (“It is not possible to state precise criteria for 
determining the existence of a trade secret.”). There are close calls in 
disputes over trade secrets, confidential information, and goodwill. 
Irrespective of differing views of the importance of business goodwill, the 
issue has been resolved. The Act expressly provides that goodwill is an interest 
worthy of protection, and the common law before that agreed. Tex. Bus. & Com. Code § 15.50(a); 
Mann Frankfort, 289 S.W.3d at 858; Sheshunoff; 209 S.W.3d at 649 (citations omitted); 
DeSantis, 793 S.W.2d at 
682.
            
Further, stare decisis does not compel 
perpetuating an interpretation of section 15.50 that the entire Court agrees 
cannot be discerned from the text of the statute. See ____ S.W.3d ___ 
(Green, J., dissenting). Construing statutes as written is necessary to 
predictability in statutory interpretation and to validating the public’s trust 
in and reliance on the words they read in the statute books. Certainly, the 
doctrine of stare decisis is essential to the 
stability of the law, which is the reason departures from it are rare. Here, the 
doctrine has little force as we have questioned Light each time we have 
discussed it and have never affirmed Light’s 
“give rise” requirement. We explained in Southwestern Bell Telephone Co. v. 
Mitchell:
 
Generally, the doctrine of stare decisis dictates that once the Supreme Court announces a 
proposition of law, the decision is considered binding precedent, but we have 
long recognized that the doctrine is not absolute. [W]e adhere to our precedents 
for reasons of efficiency, fairness, and legitimacy, and when adherence to a 
judicially-created rule of law no longer furthers these interests, and the 
general interest will suffer less by such departure, than from a strict 
adherence, we should not hesitate to depart from a prior holding. [U]pon no sound principle do we feel at liberty to perpetuate 
an error, into which either our predecessors or ourselves may have unadvisedly fallen, merely upon the ground 
of such erroneous decision having been previously 
rendered.
 
 
276 S.W.3d 443, 447 (Tex. 2008) 
(internal quotation marks omitted, alterations in original). Our brethren have 
reasoned that stare decisis does not compel 
them to follow a past decision when its rationale does not withstand “careful 
analysis.” Arizona v. Gant, 129 S. Ct. 1710, 1722 
(2009) (citation omitted). The Court agreed twice before that careful 
analysis compels a modification of our construction of section15.50, and it is 
appropriate to modify Light here as well.
V. 
CONCLUSION
            
In this case, the covenant not to compete is “ancillary to or part of” an 
otherwise enforceable agreement because the business interest being protected 
(goodwill) is reasonably related to the consideration given (stock options). 
Section 15.50 requires that there be a nexus between the covenant not to compete 
and the interest being protected. Tex. 
Bus. & Com. Code § 15.50(a). This requirement is 
satisfied by the relationship that exists here. We reverse the judgment of the 
court of appeals and remand to the trial court for further proceedings 
consistent with this opinion.
 
 
                                                                                    
 ______________________________
                                                                                    
 Dale Wainwright
                                                                                    
 Justice
 
 
OPINION DELIVERED: June 24, 2011








[1] The 
increase in the number of shares subject to Cook’s option is apparently due to 
MMC stock splits.

[2] The 
English common law reasoned:
 
Contracts 
for the partial restraint of trade are upheld, not because they are advantageous 
to the individual with whom the contract is made, and a 
sacrifice pro tanto of the rights of the community, 
but because it is for the benefit of the public at large that they should be 
enforced. . . . [T]he public derives an advantage in the . . . 
security [a reasonable noncompete covenant] affords 
that the master will not withhold from the servant instruction in the secrets of 
his trade, and the communication of his own skill and experience, from the fear 
of his afterwards having a rival in the same business.
 
Mallan v. May, 11 Mees. & W. 652, 665–66 (Ex. of P. 
1843). The Massachusetts Supreme Court recognized nearly two centuries 
ago: [S]mall discouragements will have no injurious effect in checking in some 
degree a spirit of competition. An agreement with a tradesman to give him all 
the promisor’s custom or business, upon fair terms, 
and not to encourage a rival tradesman to his injury, can hardly be considered 
as a restraint of trade. Certainly it is not such a restraint as would be 
injurious to the public, for in proportion as it discourages one party it 
encourages another.
Palmer v. 
Stebbins, 3 Pick. 188, 192–93 (Mass. 1825). Valuing 
“honesty and fidelity” among businesspeople in the consideration of restrictive 
covenants, the Georgia Supreme Court explained that it would be a “scandal” if 
the law is forced to uphold a “dishonest act” as in denying enforcement of 
contract terms with a person “in violation of his solemn engagement.” Hood v. Legg, 128 S.E. 891, 896–97 (Ga. 1925) (internal 
quotation omitted).

[3] 
Numerous courts espoused a similar practical common law rationale for 
enforcing consensual noncompetition covenants that constitute limited restraints 
on trade. Such reasonable restraints “afford a fair protection to the interests 
of the party in favour of whom it is given, and not so 
large as to interfere with the interests of the public.” Horner v. Graves, 7 Bing. 735, 743 (C.P. 1831); 
see also United States v. Addyston Pipe 
& Steel Co., 85 F. 271, 282–83 (6thCir. 1898), aff’d 175 U.S. 211 (1899); McClain & Co. v. 
Carucci, No. 3:10-cv-00065, 2011 WL 1706810, at 
*4–5 (W.D. Va. May 4, 2011) (quoting Merriman v. Cover, Drayton & 
Leonard, 51 S.E. 817, 819 (Va. 1905)); Gafnea 
v. Pasquale Food Co., 454 So. 2d 1366, 1368–69 (Ala. 1984); Freeman v. 
Brown Hiller, Inc., 281 S.W.3d 749, 754–55 (Ark. Ct. App. 2008); Freudenthal v. Espey, 102 P. 
280, 284 (Colo. 1909); Scott v. Gen. Iron & Welding Co., 368 A.2d 
111, 114 (Conn. 1976); Hood v. Legg, 128 S.E. 891, 896–97 (Ga. 1925); 
Hursen v. Gavin, 44 N.E. 735, 735 (Ill. 1896); 
Hammons v. Big Sandy Claims Serv., Inc., 567 S.W.2d 313, 315 (Ky. Ct. App. 
1978); Montgomery v. Getty, 284 S.W.2d 313, 317 (Mo. Ct. App. 1955); 
Eldridge v. Johnston, 245 P.2d 239, 250–51 (Ore. 1952); Turner v. 
Abbott, 94 S.W.64, 66–69 (Tenn. 1906); Kradwell 
v. Thiesen, 111 N.W. 233, 234 (Wis. 
1907).

[4] In the 
thirteenth through the sixteenth centuries, the English common law generally 
regarded all restraints in employment contracts as departures from the principle 
of economic freedom and therefore void. Blake, Employee 
Agreements Not to Compete, 73 Harv. L. Rev. at 631–32.

[5] In 
addition to legislatively overruling Hill’s “common calling” requirement, 
the Act also made explicit that a court could reform covenants that contained 
unreasonable restrictions on time, geographical area, or scope of activity or 
restrictions that were greater than necessary to make them reasonable and no 
greater than necessary, and could provide money damages for a violation 
occurring after reformation. Peat Marwick Main & Co. v. 
Haass, 818 S.W.2d 381, 388 (Tex. 1991); Tex. Bus. & Com. Code § 15.51(c); 
see also Light v. Centel Cellular Co. of Tex., 
883 S.W.2d 642, 644 (Tex. 1994) (citing Tex. Bus. & Com. Code § 15.52) 
(stating that the Act supplanted prior common law).

[6] The 
covenant also had to be designed to enforce a return promise of the covenantee, which further narrowed beyond the common law 
precepts the applicability of covenants not to compete. See Paul & 
Crawford, Refocusing Light, 38 St. Mary’s L.J. at 752.

[7] The 
second prong of the Light test to determine if a covenant not to compete 
is ancillary to an otherwise enforceable agreement, which requires that the 
covenant be designed to enforce the employee’s promise, is not at issue in this 
case. Light, 883 S.W.2d at 647. However, we 
re-emphasize that the Act provides for the enforcement of reasonable 
covenants not to compete. Tex. Bus. 
& Com. Code § 15.50(a).